RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee*,

*v.*

ANTOINE WOODS (20-1214); AUSTIN WOODS (20-1215),

> *Defendants-Appellants*.

⎤
⎟
⎟
⎟
⎟
> Nos. 20-1214/1215
⎟
⎟
⎟
⎟
⎦

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cr-20022—Nancy G. Edmunds, District Judge.

Argued: June 9, 2021

Decided and Filed: September 17, 2021

Before: COOK, GIBBONS, and DONALD, Circuit Judges.[*]

─────────────────

## COUNSEL

**ARGUED:** Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant in 20-1214. Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant in 20-1215. William M. Sloan, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant in 20-1214. Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant in 20-1215. William M. Sloan, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

[*]The Honorable Deborah L. Cook participated in this decision before she took inactive senior status on August 27, 2021.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Antoine and Austin Woods (collectively "the Woods brothers") appeal their convictions and sentences.  The Woods brothers participated in multiple drive-by shootings in an attempt to murder a member of a rival gang.  Antoine Woods was indicted for several offenses in violation of the Violent Crimes in Aid of Racketeering Act ("VICAR"): conspiracy to commit murder in aid of racketeering; attempted murder in aid of racketeering; assault with a dangerous weapon in aid of racketeering; using, carrying, and discharging a firearm during and in relation to a crime of violence; and obstruction of justice.  Austin Woods was indicted for conspiracy to commit murder in aid of racketeering and using, carrying, and discharging a firearm during and in relation to a crime of violence.  After a joint trial, the jury rendered a guilty verdict for both brothers on the conspiracy charge and one of the firearm charges.  The jury also rendered a guilty verdict for Antoine on the charges of attempted murder, assault with a dangerous weapon, an additional firearm charge, and obstruction of justice.  The Woods brothers appealed, and this court consolidated their cases for briefing and submission.  We vacate Antoine Woods's conviction in Count 9 for attempted murder in aid of racketeering and remand to the district court to amend its judgment as to Counts 1, 3, 16, and 17.  We affirm Antoine and Austin Woods's convictions on all other counts.

I.

Antoine and Austin Woods were members of a Detroit-based group known as HNIC. The Woods brothers claim that HNIC was a rap group that made music videos to post on social media.  The government argues, however, that HNIC was a street gang "engaged in drug dealing, intimidation, and violence."  CA6 R. 51, Appellee Br., 3.  Co-defendant and fellow HNIC member Donovann Rhymes testified during trial that HNIC was a gang involved in criminal activities including "[d]rug sales, attempt[ed] murders, murders, [and] scams."  DE 220, Trial Tr., Page ID 2399.  According to Rhymes, HNIC sold illegal drugs including heroin, marijuana, prescription opioids, and codeine drink.  Rhymes also stated that HNIC members promoted and protected the gang's reputation by engaging in retributive violence against anyone who

disrespected HNIC.  The Woods brothers were two of HNIC's leaders and gave other members orders "[t]o assault, kill, [and] rob people."  *Id.* at Page ID 2396, 2401.

On October 24, 2015, the Woods brothers and other HNIC members got into a fight with James Williams, Carlton Green, and Eric Green at the Fairlane Mall in Detroit.  Williams was a member of a rival gang, and he and Antoine Woods had a longstanding feud.  The two groups began fighting with knives and poles at the mall, and eventually the HNIC members—including the Woods brothers—ran away.  Williams and his associates ran after them, tackled Austin, and beat him until the mall security guards broke up the fight.  After the altercation, Williams created multiple memes and posted them to social media making fun of HNIC, and specifically the Woods brothers, for running away during the fight.

Williams's social media posts upset HNIC, including the Woods brothers, and they decided to respond.  Rhymes testified that shortly after the Fairlane Mall fight he heard James Eldridge, another HNIC leader, tell Antoine that he needed to "do something about [Williams's social media posts.]"  DE 220, Trial Tr., Page ID 2456–57.  Rhymes explained that he understood Eldridge to mean that Antoine should shoot Williams or otherwise retaliate against him.  Two days later, Eldridge texted the Woods brothers and told them they needed to respond to Williams's social media taunts.  DE 203, Trial Tr., Page ID 1796 (ATF Special Agent Matthew Rummel describing Eldridge's text as "[i]t says, man, y'all better fuck this N word up, and then an emojicon of a person crying.").  Austin responded, "I ain't posting nothing.  I'm on a mission for real," and Antoine said "No mo internet games bro, just know dat."  *Id.* at Page ID 1798, 1800.  Rhymes testified that he subsequently went with the Woods brothers to surveil a residence associated with Williams "to kill him."  DE 220, Trial Tr., Page ID 2457–59.  On November 30, 2015, Austin texted Antoine a link to a YouTube video that showed the address of Williams's grandmother's house and told Antoine that he thought Williams was hiding there.

On December 6, 2015, there was a shooting at the King of Diamonds strip club where Williams was having a party.  Rhymes testified that HNIC was responsible for the shooting and that he went to the strip club with Antoine and two other HNIC members to kill Williams.  The four HNIC members waited in cars outside of King of Diamonds until they saw Williams exit the club.  Rhymes testified that upon seeing Williams, Antoine said "there you go" and pointed his

gun at the back of Williams's head.  DE 220, Trial Tr., Page ID at 2506.  Antoine and Rhymes both fired their guns at Williams, and Williams and his associates returned fire.  Rhymes, Antoine, and the other HNIC members fled the scene after exchanging multiple shots with Williams's group.

On December 20, 2015, there was another shooting, this time at Williams's grandmother's house.  Eric Green, Williams's cousin, was in the house during the shooting and testified that he believed five to eight shots were fired into his grandmother's house.  Green did not see who fired the shots.  Antoine later told Rhymes that he "tore [Williams's] grandma's house up," which Rhymes understood to be an admission that Antoine was the shooter.  DE 222, Trial Tr., Page ID 2705.

On September 6, 2017, a federal grand jury indicted the Woods brothers on multiple charges related to the December 6, 2015 shooting, the December 20, 2015 shooting, and two other drive-by shootings directed at Williams.  On August 08, 2018, the grand jury returned a second superseding indictment.  Relevant to this appeal, both Antoine and Austin were charged with conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (Count 1); using, carrying, and discharging a firearm on or about December 6, 2015, during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2 (Count 5); and using, carrying, and discharging a firearm on or about December 20, 2015, during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2 (Count 11).[1]  Additionally, Antoine was charged with attempted murder in aid of racketeering on or about December 6, 2015, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count 3); assault with a dangerous weapon in aid of racketeering on or about December 6, 2015, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Count 4); attempted murder in aid of racketeering on or about December 20, 2015, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count 9); and assault with a dangerous weapon in aid of

---

[1]Antoine and Austin were also charged with § 924(c) violations related to the two additional shootings, but both were acquitted of those charges.

racketeering on or about December 20, 2015, in violation of 18 U.S.C.§§ 1959(a)(3) and 2 (Count 10).**2**

The Woods brothers were tried jointly. The government's first witness was ATF Special Agent Matthew Rummel. When asked to describe the nature of the initial investigation into HNIC, Rummel testified that "[v]arious members were either witnesses or party to some violent crimes, including a drive-by shooting of a residence in which a three-month old was killed." DE 323, Trial Tr., Page ID 4644. Shortly thereafter, defense counsel moved for a mistrial, arguing that mentioning the killing of a small child was extremely prejudicial. The district court denied the motion and later gave the jury a limiting instruction to disregard Rummel's comment about the drive-by shooting.

At the close of the government's proof, the Woods brothers jointly moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and the district court denied the motion. At the close of all evidence, the district court instructed the jury that it could find the Woods brothers guilty of the § 924(c) charges under a theory of *Pinkerton* liability. Relevant to this appeal, a jury convicted Antoine of Counts 1, 3, 4, 5, 9, 10, and 11; Austin was convicted of Counts 1 and 11. The Woods brothers filed post-trial motions for judgment of acquittal and for a new trial, which the district court denied. The district court sentenced Antoine to a total of 384 months of imprisonment and Austin to a total of 168 months of imprisonment. The Woods brothers appealed, and their cases were consolidated for briefing and submission.

The Woods brothers raise three common issues on appeal, and each makes several individual arguments. Both defendants challenge whether their § 924(c) charges were based on proper predicate crimes of violence given that the jury was instructed on—and may have come to a guilty verdict based on—a *Pinkerton* theory of liability. They also argue that there was insufficient evidence to support their convictions of conspiracy to commit murder in aid of racketeering and that the district court abused its discretion by denying their motion for a mistrial after Rummel improperly connected HNIC to the shooting of a young child. Individually, Austin

---

**2**Antoine was also charged with attempted murder in aid of racketeering and assault with a dangerous weapon in aid of racketeering related to the other shootings of which he was acquitted. Additionally, he was indicted and found guilty on two counts of obstruction of justice, which he does not challenge on appeal.

argues that his § 924(c) charge was based on insufficient evidence and that there was insufficient evidence that he knowingly joined the conspiracy to commit murder. Antoine separately argues that his convictions on Counts 9 and 10 violate the Double Jeopardy Clause.

II.

**A.     924(c) Charges**

**1.     Standard of Review**

We review de novo issues of law, including whether an offense is a crime of violence under § 924(c)(3). *Manners v. United States*, 947 F.3d 377, 379 (6th Cir. 2020).

We review a challenge to the sufficiency of the evidence in a criminal case de novo. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). When the defendant challenges the sufficiency of the evidence to support a jury verdict, we review the evidence in the light most favorable to the government. *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020). We will affirm a defendant's conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (quoting *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016)). "[C]ircumstantial evidence alone can defeat a sufficiency challenge." *United States v. Volkman*, 797 F.3d 377, 390 (6th Cir. 2015). "We can neither independently weigh the evidence, nor make our own assessment of the credibility of the witnesses who testified at trial." *Garcia*, 758 F.3d at 718.

**2.     Merits**

**a.     Predicate Crimes**

18 U.S.C. § 924(c) penalizes using, carrying, or possessing a firearm "during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States." If the firearm is discharged, as in this case, the minimum term of imprisonment is 10 years. *Id.* § 924(c)(1)(A)(iii). Until recently, there were two ways an offense could qualify as a predicate crime of violence for purposes of § 924(c). Under the elements clause, a crime of violence is defined as an "offense that is a felony and . . .

has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). Under the residual clause, a crime of violence was defined as any felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). However, the Supreme Court struck down the residual clause as unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Before *Davis*, conspiracies to commit violent crimes were proper predicate offenses under the residual clause. *See United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019). After *Davis*, a predicate offense qualifies as a crime of violence only if use of force is an element of the offense, and this excludes conspiracy charges. *Manners*, 947 F.3d at 379.

The Woods brothers argue that the attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) ("VICAR attempted murder") charges and the assault with a dangerous weapon in aid of racketeering under 18 U.S.C. § 1959(a)(3) ("VICAR assault with a dangerous weapon") charges underlying their § 924(c) charges are not proper predicate offenses because the jury instructions allowed them to be convicted of the 924(c) charges under a theory of *Pinkerton* liability. *Pinkerton* liability is a type of vicarious liability that allows members of a conspiracy to be held liable for reasonably foreseeable substantive offenses committed by co-conspirators in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946); *see also United States v. Hamm*, 952 F.3d 728, 744 (6th Cir. 2020) ("The doctrine holds that a member of a conspiracy is liable for substantive offense[s] committed by his co-conspirators, even if he did not participate in them, as long as: (1) the offenses are done in furtherance of the conspiracy, (2) they fall within the scope of the unlawful project, and (3) they are reasonably foreseeable consequence[s] of the unlawful agreement." (alterations in original) (internal quotation marks omitted)).

The Woods brothers assert that because *Pinkerton* liability depends on the existence of a conspiracy and conspiracy charges are no longer proper predicate crimes of violence after *Davis*, their VICAR attempted murder and VICAR assault with a dangerous weapon charges are also not proper predicate offenses. The Woods brothers' argument conflates the predicate crimes of violence underlying their § 924(c) conviction (which are not conspiracy charges) and the basis of

liability for the 924(c) charges, which may have been *Pinkerton* liability. The Supreme Court's only inquiry in *Davis* was whether the § 924(c) residual clause was unconstitutionally vague, not whether *Pinkerton* liability is a proper basis for a 924(c) conviction. *See Davis*, 139 S. Ct. at 2327. Finding the Woods brothers guilty through a theory of *Pinkerton* liability is still permissible as long as the underlying predicate offenses qualify as crimes of violence under the § 924(c) elements clause. *United States v. Meyers*, 102 F.3d 227, 238 (6th Cir. 1996) (affirming a § 924(c) conviction based on *Pinkerton* liability). Because both VICAR attempted murder and VICAR assault with a dangerous weapon are crimes of violence, not conspiracy crimes, the Woods brothers' argument fails.

In *Davis*, the conspiracy charge itself was not at issue. Rather, the Court clearly stated that it was the fact that the conspiracy charge rested solely on § 924(c)'s residual clause, and not the elements clause that precluded liability. *Davis*, 139 S. Ct. at 2325. Substantive charges like VICAR murder, on the other hand, rely on the elements clause, not the unconstitutionally vague residual clause. This is true whatever legal theory of liability the jury relies on to find the defendant guilty of § 924(c).

This is not a situation, as the Woods brothers claim, where their § 924(c) convictions are predicated on a conspiracy charge. The indictment clearly stated that VICAR attempted murder and VICAR assault with a dangerous weapon are the predicate offenses for the Woods brothers' § 924(c) charges. The jury instructions explained that the jury could find the Woods brothers guilty of the § 924(c) charge in Count 5 based on "the crime of attempted murder in aid of racketeering as charged in Count [3], or assault with a dangerous weapon as charged in Count 4" and could find them guilty of Count 11 based on "the crime of attempted murder in aid or racketeering as charged in Count 9, or assault with a dangerous weapon as charged in Count [10]." DE 348, Trial Tr., Page ID 5465; *see also* DE 247-1, Jury Instructions, Page ID 3873–74. Both the indictment and jury instructions ensured that the jury knew the predicate offenses were VICAR attempted murder and VICAR assault with a deadly weapon, not the conspiracy charge brought in Count 1. *See United States v. Nixon*, 825 F. App'x 360, 364 (6th Cir. 2020) ("By describing and naming the correct predicate offense, the indictment and jury instruction left no confusion for the jury that the predicate offense was a crime of violence."); *see also Reyes v.*

*United States*, 998 F.3d 753, 758–59 (7th Cir. 2021).  The Woods brothers' § 924(c) charges were properly based on crimes of violence under the § 924(c) elements clause.

The jury's potential reliance on *Pinkerton* liability to convict of the 924(c) offenses does not change this outcome.  Other circuits have come to a similar conclusion, finding that a defendant can be convicted of a § 924(c) charge based on a theory of *Pinkerton* liability.  *See United States v. Henry*, 984 F.3d 1343, 1356–57 (9th Cir. 2021) (upholding a § 924(c) conviction based on *Pinkerton* liability after *Davis*); *United States v. Howell*, No. 18-3216, 2021 WL 3163879, at *4 (3d Cir. July 27, 2021) ("[G]uilt may . . . be found for the § 924(c) offense under *Pinkerton* based on a coconspirator who also completed the armed Hobbs Act robbery."); *United States v. Hernandez-Roman*, 981 F.3d 138, 145 (1st Cir. 2020) ("We have held that where, as here, *Pinkerton* liability is in play, 'the defendant does not need to have carried the gun himself to be liable under section 924(c).'") (quoting *United States v. Flecha-Maldonado*, 373 F.3d 170, 179 (1st Cir. 2004))); *United States v. Johnson*, 827 F. App'x 283, 286 (4th Cir. 2020) ("This argument confuses the offense of Hobbs Act conspiracy with the co-conspirator theory of liability for Hobbs Act robbery. . . . [W]e have long-held that a co-conspirator's § 924(c)(1) violation may be imputed to other members of the conspiracy . . . under the *Pinkerton* conspiracy doctrine." (second omission in original) (internal quotation omitted)).[3]

We note that Austin Woods, who was convicted of the 924(c) offense charged in Count 11, was not charged with either of the predicate acts for that offense, which were charged in Counts 9 and 10.  While it is unusual for the government to rely on *Pinkerton* liability as the basis for a § 924(c) charge without charging the defendant with the underlying predicate crime of violence, as is the case here with Austin, the law permits the government to make this questionable strategic choice.  Charging the underlying predicate offense is not required for liability under § 924(c); it is enough if the defendant may be prosecuted in a court of the United States for the predicate offense.  18 U.S.C. § 924(c); *see also United States v. Smith*, 182 F.3d 452, 457 (6th Cir. 1999) ("[Section 924(c)] requires only that the defendant have committed a

---

[3]Additionally, contrary to defendants' argument otherwise, the Supreme Court's decision in *Rosemond v. United States*, 572 U.S. 65 (2014), did not heighten the mens rea requirement under *Pinkerton*.  *United States v. Edmond*, 815 F.3d 1032, 1047 (6th Cir. 2016), *vacated on other grounds by United States v. Harper*, 137 S. Ct. 1577 (Mem) (2017) ("*Rosemond* did not alter the *Pinkerton* framework, as at least one circuit has already concluded.").

violent crime *for which he may be prosecuted* in federal court. It does not even require that the crime be charged . . . [and] it does not require that he be convicted."). In sum, our precedent requires us to affirm the Woods brothers' § 924(c) convictions, even if they were found liable for the 924(c) offenses by a theory of *Pinkerton* liability.

### b. Sufficiency of the Evidence Challenge

Alternatively, Austin argues that there is insufficient evidence to convict him on Count 11's § 924(c) charge related to the December 20 drive-by shooting of Williams's grandmother's house under an aiding and abetting theory of liability. He first argues that it is impossible that the jury found him guilty of Count 11 under a *Pinkerton* theory of liability because he was not present for the shooting and because the jury only convicted him of one of the four § 924(c) charges brought in the indictment. According to Austin, "[i]f the jury had found guilt[] as to count eleven, under a *Pinkerton* theory of liability, they would have necessarily have found guilt as to the other three counts." CA6 R. 25 (Austin), Appellant Br., 19. Thus, he reasons the jury must have found him guilty of Count 11 based on an aider and abettor theory. He goes on to argue that there was insufficient evidence to convict on the aider and abettor theory.

Austin's argument that the jury must have eschewed a *Pinkerton* theory of liability is unpersuasive. The jury instructions stated that to find Austin guilty of any of the § 924(c) charges under a *Pinkerton* theory the jury must find that the *specific firearm crime* under consideration was committed to help advance the conspiracy and was reasonably foreseeable to Austin. Each § 924(c) charge was based on a specific underlying firearm crime. The jury could have reasonably found that there was sufficient evidence to conclude that the shooting on December 20, 2015 was reasonably foreseeable to Austin, but that the other shootings charged in the indictment were not reasonably foreseeable to him. The jury instructions allowed the jury to find Austin guilty of one of the § 924(c) charges under a *Pinkerton* theory of liability but not the others, and the jury's verdict is entirely consistent with finding Austin guilty of Count 11 under a *Pinkerton* theory of liability.

There was sufficient evidence for a reasonable juror to find Austin guilty beyond a reasonable doubt of Count 11 based on a *Pinkerton* theory of liability. To find Austin guilty

under a *Pinkerton* theory of liability, the jury must have found beyond a reasonable doubt that: (1) Austin "was a member of the conspiracy charged in Count 1 of the indictment," (2) the December 20, 2015 shooting happened when he was still a member of the conspiracy, (3) the December 20, 2015 shooting "was committed to help advance the conspiracy," and (4) the December 20, 2015 shooting "was within the reasonably foreseeable scope of the [conspiracy]." DE 348, Trial Tr., Page ID 5470.

There was sufficient evidence for the jury to find elements of the Count 11 predicate crime. *See supra* Part II.B. Austin does not challenge that he was a member of HNIC on December 20, 2015. There is extensive witness testimony to support the conclusion that the December 20 shooting was intended to advance HNIC after Williams publicly taunted the Woods brothers and HNIC. Finally, there is sufficient evidence to conclude that the December 20, 2015 shooting was reasonably foreseeable to Austin. On November 30, 2015, Austin sent Antoine a link to a YouTube video that revealed Williams's grandmother's address. Austin said, "that's where he [is] hiding, I guarantee." DE 203, Trial Tr., Page ID 1813. Combined with the testimony that Austin agreed that Williams needed to be killed for his social media posts taunting HNIC after the Fairlane Mall fight, a rational juror could find that it was reasonably foreseeable to Austin that an HNIC member would try to kill Williams at his grandmother's house where Austin claimed he was "hiding." Accordingly, because there was sufficient evidence to independently convict him under a *Pinkerton* theory of liability, we need not address whether there was also sufficient evidence to convict him on an aiding and abetting theory of liability.

**B.     Sufficiency of the Evidence for Conspiracy to Commit Murder in Aid of Racketeering (Count 1, VICAR murder)**

**1.     Standard of Review**

We review a challenge to the sufficiency of the evidence in a criminal case de novo. *Garcia*, 758 F.3d at 718. When the defendant challenges the sufficiency of the evidence to support a jury verdict, we review the evidence in the light most favorable to the government and will affirm a defendant's conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hendricks*, 950 F.3d at 352 (quoting *Vichitvongsa*, 819 F.3d at 270).

If the defendant failed to preserve his sufficiency of the evidence challenge at trial, however, we will review the evidence under the more lenient "manifest miscarriage of justice" standard.  *United States v. Ray*, 803 F.3d 244, 262 (6th Cir. 2015).  A defendant can only succeed under this standard if the record is "devoid of evidence pointing to guilt."  *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008).

### 2.      Merits

The Woods brothers both challenge the sufficiency of the evidence as to Count 1, conspiracy to commit murder in aid of racketeering ("VICAR murder").  To establish a VICAR violation, the government must show:

> (1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Odum*, 878 F.3d 508, 516 (6th Cir. 2017), *vacated on other grounds sub nom. Frazier v. United States*, 139 S. Ct. 319 (2018) (quoting *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)).  Both Antoine and Austin argue that HNIC was not a RICO enterprise and that they did not attempt to murder Williams to further their positions in HNIC.  Additionally, Austin claims that there was insufficient evidence to find that he knowingly joined the conspiracy to murder Williams.

The parties dispute whether the Woods brothers waived this sufficiency of the evidence challenge as to Count 1.  The government argues that the Woods brothers failed to specifically raise a motion for acquittal or new trial on Count 1 at the close of evidence, so the panel should review the Woods brothers' claim for "manifest miscarriage of justice."  CA6 R. 51, Appellee Br., 29–30.  The Woods brothers claim that "the record reflects that the defense never intended to waive or abandon this matter, to trigger the invited error doctrine and manifest injustice standard."  CA6 R. 38 (Austin), Reply Br., 7–8.  The Woods brothers claim the proper standard of review is de novo and the court should determine whether any rational juror could have found the elements of Count 1 beyond a reasonable doubt.  Because the Woods brothers' sufficiency of

the evidence challenge fails even under de novo review, we assume for purposes of this appeal that the Woods brothers did not waive this challenge.

### a.          Racketeering Enterprise

Under § 1959, an enterprise is defined as a "partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1959(b)(2).  The enterprise must also be engaged in "racketeering activity," which includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . which is chargeable under State law and punishable by imprisonment for more than one year."  *Id.* at §§ 1959(b)(1), 1961(1).  The Woods brothers dispute that HNIC was engaged in racketeering activity.

There was sufficient evidence for a rational juror to conclude beyond a reasonable doubt that HNIC was engaged in racketeering activity including murder, threats of murder, and dealing in controlled substances.  The Woods brothers argue that HNIC was only a rap group, and that "[t]here was a distinct lack of evidence regarding illegal activities by HNIC."  CA6 R. 39 (Antoine), Appellant Br., 27; CA6 R. 25 (Austin), Appellant Br., 24.  This argument is soundly refuted by large portions of the record.  Multiple witnesses testified that HNIC was involved in dealing controlled substances including marijuana, heroin, and codeine.  Rhymes also testified about murders, attempted murders, and assaults he committed as a member of HNIC, sometimes at the Woods brothers' direction.  DE 220, Trial Tr., Page ID 2398–2401 (describing how leaders of HNIC including the Woods would order members to "assault, kill, [and] rob people").  The Woods brothers appear to argue that the court should disregard Rhymes's testimony because he was a cooperating co-defendant, but we may not reweigh the evidence or assess Rhymes's credibility on appeal.  *Ledbetter*, 929 F.3d at 353.  There is sufficient evidence for a reasonable juror to conclude that HNIC was engaged in racketeering activity and, thus, was a criminal enterprise.

b. **Maintain or increase position in HNIC**

Second, the Woods brothers claim that there was insufficient evidence to find that they joined the conspiracy to murder Williams with the purpose of maintaining or increasing their position within HNIC. "The violent-crimes-in-aid-of-racketeering statute does not extend to every 'violent behavior by a gang member under the presumption that such individuals are always motivated, at least in part, by their desire to maintain their status within the gang.'" *Ledbetter*, 929 F.3d at 358 (quoting *United States v. Hackett*, 762 F.3d 493, 500 (6th Cir. 2014)). Put another way, a defendant is not guilty of a VICAR crime when he acts "alone and with no apparent connection to the gang." *Id.* Rather, "VICAR's purpose element is met if the jury could find that an *animating purpose* of the defendant's action was to maintain or increase his position in the racketeering enterprise." *United States v. Hackett*, 762 F.3d 493, 500 (6th Cir. 2014) (emphasis added) (internal quotation marks omitted). For example, a defendant may be liable if the violent crime "was sanctioned by the gang and . . . the defendant participated because he knew it was expected of him as a member" or the crime "fit the mold of the gang's typical missions against rival[s]." *Ledbetter*, 929 F.3d at 358–59.

The Woods brothers claim that because they were already leaders of HNIC, they could not increase their position with HNIC and that "[t]he government failed to present evidence that any action by [the Woods brothers] or any action agreed-upon, relating to [Williams], was for the 'animating purpose' of maintaining [their] position within HNIC." CA6 R. 39 (Antoine), Appellant Br., 26; *see also* CA6 R. 25 (Austin), Appellant Br., 22–23. Again, the Woods brothers' argument discounts Rhymes's testimony. Rhymes testified that it was important to HNIC to protect the gang's reputation and that HNIC members would engage in retribution in response to any perceived disrespect. Rhymes said that Eldridge, the third leader of HNIC, told Antoine that he needed to do something about Williams's social media posts mocking HNIC and the Woods brothers after the Fairlane Mall fight. A rational juror could conclude based on Rhymes's testimony that the conspiracy to murder Williams was sanctioned by HNIC or that the Woods brothers participated in it because they knew it was expected of them as HNIC members. *See Ledbetter*, 929 F.3d at 358–59. Accordingly, there was sufficient evidence to conclude that

the Woods brothers acted with the animating purpose of maintaining or increasing their position in HNIC.

### c.          Knowingly joined conspiracy to kill Williams

Lastly, Austin argues that the government failed to prove he agreed to join the conspiracy to murder Williams. According to Austin, "the Government failed to present evidence that [he] knew of this agreement [to murder Williams,] or specifically decided to join in." CA6 R. 25 (Austin), Appellant Br., 25. Austin's argument is unconvincing. The government presented evidence that Austin was a knowing and willing participant in the conspiracy to murder Williams. For example, Austin texted other HNIC members a link to a YouTube video revealing Williams's grandmother's address and told them that he thought that was where Williams was hiding. He also agreed with Eldridge when Eldridge said Williams needed to pay for the social media posts mocking HNIC and the Woods. Finally, Rhymes testified that he waited outside an apartment building associated with Williams with Antoine and Austin and that Austin told Rhymes to kill Williams if he saw him. This evidence is sufficient for a rational juror to conclude that Austin knowingly participated in the conspiracy to murder Williams.

In sum, the Woods brothers' arguments that there was insufficient evidence to sustain their conspiracy to commit murder charges are unpersuasive. The government provided ample evidence that both the Woods brothers were members of HNIC and knowingly participated in the conspiracy to murder Williams in order to advance the goals of HNIC.

## C.          Motion for Mistrial

Next, the Woods brothers challenge the district court's denial of their motion for a mistrial. We review a district court's denial of defendants' motion for mistrial for abuse of discretion. *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

The Woods brothers moved for mistrial after Rummel stated that the investigation into HNIC was started after a drive-by shooting in which a three-month old baby was killed. In determining whether an improper reference warrants a mistrial, we consider five factors: "(1) whether the remark was unsolicited, (2) whether the . . . line of questioning was reasonable,

(3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence" presented against the defendant. *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003). "The primary concern [in this inquiry] is fairness to the defendant." *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994).

On May 21, 2019, the government called Rummel as its first witness in the trial. After discussing Rummel's background and qualifications as an ATF special agent, the prosecution asked about Rummel's knowledge of HNIC:

Q.      And at that point, when you first heard of HNIC for the first time in 2012, 2013, was there an ongoing investigation of HNIC under way?

A.      Yes.

Q.      And what was the nature of that investigation?

A.      Various members were either witnesses or party to some violent crimes, including a drive-by shooting of a residence in which a three-month old was killed.

DE 323, Trial Tr., Page ID 4643–44. Almost immediately after this statement, defense counsel requested a sidebar conference and moved for a mistrial arguing that the reference to the infant's death was highly prejudicial. The district court agreed that the comment was "extremely prejudicial," but postponed ruling on the motion for a mistrial. *Id.* at Page ID 4646–47. Before allowing the questioning to continue, the district court told the prosecution and Rummel not to mention the death of the three-month old or detailed information about prior investigations again.

The next day, the district court heard oral arguments from the parties about the motion for a mistrial and allowed defense counsel to question Rummel. Rummel explained that although HNIC members were interviewed about the drive-by shooting that killed the infant, no HNIC members were charged with the murder of the three-month old. When asked by defense counsel whether "it [came] up during discussions with the government attorneys in preparation for your testimony that you would be making reference to the shooting of the three-month-old," Rummel answered "[n]o." DE 228, Trial Tr., Page ID 3330–31. After hearing arguments from both sides, the district court denied the motion for a mistrial. The district court found that the government did not act in bad faith and that Rummel's statement, while unfortunate and

incomplete, did not rise to the level of false testimony. The district court agreed, however, to give the jury a limiting instruction on Rummel's testimony if the parties requested one.

On May 29, 2019, the district court read the jury the following limited instruction regarding Rummel's testimony:

> Earlier in this trial on May 21, 2019 you heard testimony from Special Agent Matthew Rummel that law enforcement investigated whether various members of HNIC were either witnesses or parties to a [drive-by] shooting of a residence that resulted in the death of a three-month-old baby, child, in 2012 or 2013.

> The government and the defendants have agreed or stipulated to the following fact: Upon further investigation, law enforcement ultimately determined that neither HNIC nor defendant Antoine Woods nor defendant Austin Woods were involved in the [drive-by] shooting. Accordingly, you are instructed to completely disregard Agent Rummel's testimony about that 2012 or 2013 [drive-by] shooting. Do not discuss it or consider it in your deliberations. You cannot consider it in any way against either of the defendants. Do not let it influence your verdict in any way. Thank you.

DE 217, Trial Tr., Page ID 1892−93.

The district court did not abuse its discretion by denying the Woods brothers' motion for a mistrial. The evidence shows that Rummel's statement about the three-month old's killing was unintentional and was not elicited in bad faith by the government.[4] Furthermore, the district court gave the jury a limiting instruction to disregard Rummel's statement as soon as the parties notified the government that they had agreed on the instruction's language. The limiting instruction clearly directed the jury to "completely disregard" Rummel's statement about the drive-by shooting and "not let it influence [the] verdict in any way." DE 217, Trial Tr., Page ID 1893. The limiting instruction also explained that the drive-by shooting was not relevant to this case because "neither HNIC nor defendant Antoine Woods nor defendant Austin Woods were involved the drive-by shooting." *Id.* at Page ID 1893. Finally, the short statement made by

---

[4]The Woods speculate that Rummel's testimony must have been a "designed statement" because it arose "within the first few questions" of his testimony and "unlike a situation where the prosecution was examining a lay witness, [Rummel] was the case agent, a witness the AUSA would have spent significant time preparing for his testimony." CA6 R. 39 (Antoine), Appellant Br., 29; CA6 R. 25 (Austin), Appellant Br., 27–28. This argument is directly contradicted, however, by Rummel's testimony under oath that he had not discussed the shooting with the prosecution during his preparation for trial.

Rummel was only a small part of the fourteen-day trial against the Woods brothers. In sum, based on the surrounding facts and circumstances, Rummel's statement was not so prejudicial that it was unfair for the Woods brothers to continue the trial. The district court did not abuse its discretion.

**D.      Double Jeopardy Counts 9 and 10**

Next, Antoine argues that his convictions on Counts 9 and 10 violate the Double Jeopardy Clause. CA6 R. 39 (Antoine), Appellant Br., 31–36. Because Antoine did not raise this claim before the district court, it is reviewed for plain error. *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008). Under plain error review, the defendant "must show that there is '1) error, 2) that is plain, and 3) that affects substantial rights,' and if so, he must persuade us that '4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013) (quoting *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005)).

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person will be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V. The government concedes that Antoine's conviction for VICAR attempted murder under Count 9 and VICAR assault with a dangerous weapon under Count 10 violate the Double Jeopardy Clause because "it does not appear that Congress intended for a defendant to be convicted and punished for multiple VICAR offenses based on the same shooting at the same victim at the same moment." CA6 R. 51, Appellee Br., 64. The government asks that we remand Antoine's case to the district court with instructions to amend Antoine's judgment by vacating Count 9 without prejudice and removing the $100 special assessment. Because the parties are correct that Antoine's conviction of Counts 9 and 10 violate the Double Jeopardy Clause, we grant Antoine's claim and order the district court to follow the government's recommendation to amend Antoine's judgment.

**E.      Sentencing Error for Counts 1, 3, 16, and 17**

Finally, the government requests we order the district court to amend Antoine's judgment because his sentences on Counts 1, 3, 16, and 17 exceed the statutory maximum for those counts.

The government explains:

> The district court imposed a concurrent sentence of 144 months on all of Antoine's convictions other than the § 924(c) counts. (R.326: Tr., 4747; R.294: Judgment, 4246). This was appropriate for Counts 4 and 10 under 18 U.S.C. § 1959(a)(3), which has a statutory maximum of 240 months. But the statutory maximums for the other convictions are below the imposed 144-month sentence: Counts 1 and 3 have a 120-month maximum under 18 U.S.C. § 1959(a)(5); Count 16 has a 60-month maximum under 18 U.S.C. § 371; and Count 17 has a 120-month maximum under 18 U.S.C. 1503(b)(3). The judgment should therefore be corrected so that the concurrent sentences on those counts do not exceed their respective statutory maximums. As with the vacatur of Count 9, though, none of these changes affects the guideline calculation or overall sentence, so a resentencing is unnecessary.

CA6 R. 51, Appellee Br., 68. Antoine does not address this issue in either his opening brief or his reply brief. Because the government correctly explains the district court's computation errors, we instruct the district court to amend Antoine's judgment according to the government's recommendation upon remand.

## III.

We affirm Antoine Woods's convictions except for that on Count 9 and remand with instructions to amend his judgment to vacate the Count 9 conviction without prejudice and to correct his sentence on Counts 1, 3, 16, and 17 to comply with the statutory maximums. We affirm the rest of Antoine Woods's convictions, and we affirm Austin Woods's convictions.