NOT RECOMMENDED FOR PUBLICATION

File Name: 22a0346n.06

No. 20-1929

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BERNARD THOMAS EDMOND, | ) | |
| Petitioner - Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent - Appellee. | ) ) | OPINION |

Before: GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Petitioner-Appellant Bernard Edmond appeals the denial of his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The district court granted a certificate of appealability on the issue whether Edmond's carjacking offenses, presented to the jury under a coconspirator theory of liability, constitute "crimes of violence" under 18 U.S.C. § 924(c)(3)(A). The government filed a motion to vacate the certificate of appealability as improvidently granted. Because Edmond's carjacking offenses are crimes of violence under § 924(c)(3)(A), we AFFIRM the denial of Edmond's § 2255 motion, and DENY AS MOOT the government's motion to vacate the certificate of appealability.

**I.**

From 2010 to 2011, Edmond's associates engaged in a carjacking scheme to obtain luxury vehicles. *United States v. Edmond*, 815 F.3d 1032, 1038 (6th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 1577 (2017). Usually wielding guns, they threatened valet employees and car owners,

took the keys to the luxury vehicles, and drove the vehicles away. *Id.* Intermediaries then delivered the cars to Edmond, who altered the vehicle identification numbers, paid others to falsify title documents, and sold or traded the vehicles. *Id.* at 1038, 1040. There was evidence that, although Edmond neither ordered nor took part in the carjackings, he knew that some of the vehicles were obtained through violent means. *Id.* at 1041. Testimony also showed that Edmond sought, and paid more for, vehicles with keys. *Id.* at 1040.

A federal grand jury indicted Edmond and others on, as relevant here, one count of conspiracy to violate federal law under 18 U.S.C. § 371; three counts of carjacking and causing carjacking under 18 U.S.C. §§ 2119(1) & 2; one count of attempted carjacking and causing attempted carjacking under 18 U.S.C. §§ 2119(1) & 2;[1] and four counts of using and carrying a firearm during and in relation to a crime of violence[2] under 18 U.S.C. §§ 924(c) & 2.[3]

---

[1] The third superseding indictment titled the carjacking counts as "[c]arjacking [and] [c]ausing [c]arjacking" under 18 U.S.C. §§ 2119(1) & 2. R. 109, PID 442–44. The indictment titled the attempted-carjacking count as "[a]ttempted [c]arjacking [and] [c]ausing [a]ttempted [c]arjacking." *Id.* at PID 447. The carjacking counts alleged that Edmond "caused and induced [other defendants] to take a motor vehicle from [another person] with the intent to cause serious bodily harm and death," and the attempted-carjacking count alleged that Edmond "caused and induced [another defendant] to attempt to take a motor vehicle from [another person] with the intent to cause serious bodily harm and death." *Id.* at PID 443–44, 447; *see also id.* at PID 442. The jury instructions described the carjacking charges as "carjacking or causing and aiding carjacking," and the attempted-carjacking charge as "attempted carjacking." R. 181, PID 3320, 3328. The verdict form titled the carjacking charges against Edmond as "[c]ausing carjacking," and the attempted-carjacking charge as "[c]ausing attempted carjacking." R. 137, PID 733–34. The carjacking statute does not reference "causing" carjacking, *see* 18 U.S.C. § 2119, but 18 U.S.C. § 2 states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," and "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[2] The third superseding indictment titled the § 924(c) counts as "[u]sing and [c]arrying a [f]irearm [d]uring and in [r]elation to a [c]rime of [v]iolence." R. 109, PID 442–44, 447. Those counts alleged that Edmond "caused and induced [other defendants] to intentionally use and carry a firearm during and in relation to the commission of a crime of violence." *Id.* at 443–44, 447; *see also id.* at PID 442. The jury instructions described the § 924(c) counts as "using or causing or aiding the use of a firearm during and in relation to a crime of violence." R. 181, PID 3323. The verdict form titled three of the § 924(c) charges against Edmond as "[c]ausing use or carrying of a firearm during and in relation to carjacking," and the other § 924(c) charge as "[c]ausing use or carrying of a firearm during and in relation to attempted carjacking." R. 137, PID 733–34.

[3] Edmond was also indicted on two counts of causing interstate transportation of a stolen motor vehicle under 18 U.S.C. §§ 2312 & 2; one count of falsification and removal of motor vehicle identification numbers under 18 U.S.C. § 511; three counts of trafficking in motor vehicles with falsified, altered, or removed identification numbers under 18 U.S.C. § 2321; and one count of operating a chop shop under 18 U.S.C. §§ 2322(a)(1) and (b). Count 16—causing

The case went to trial. The government did not suggest that Edmond had committed the carjackings directly; rather, its theory was that, with knowledge of the carjackings, Edmond sought and acquired the vehicles, altered their identifying information, and sold or traded them.

The district court instructed the jury that it could convict Edmond of the carjacking and § 924(c) charges under a coconspirator, or *Pinkerton*,[4] theory of liability—that is, under the rule that "all members of a conspiracy are responsible for acts committed by other members, so long as those acts are committed to help advance the conspiracy[,] occurred after a defendant joined the conspiracy, and are [within the] reasonably foreseeable scope of the agreement." R. 181, PID 3318. The district court also provided an aiding-and-abetting instruction.

The jury convicted Edmond on all the relevant charges except Count 13—using and carrying a firearm during and in relation to a crime of violence (attempted carjacking) on March 12, 2011. Edmond was sentenced to a total of 900 months, or 75 years. This court affirmed Edmond's conviction, holding that there was sufficient evidence to support Edmond's carjacking and § 924(c) convictions under a *Pinkerton* theory of liability. *See Edmond*, 815 F.3d at 1040–41. Edmond argued on direct appeal that "the jury instructions offered two paths to conviction: *Pinkerton* co-conspirator liability *or* aiding and abetting liability," and that the district court "did not correctly state the advance-knowledge requirement for aiding and abetting." *Id.* at 1041. We reasoned that "[a]ny such mistake would not alter the conviction" because "[g]iven the abundant evidence that would permit the jury to convict on the *Pinkerton* co-conspirator theory, any error in the aiding and abetting instructions did not prejudice him and thus did not affect his substantial rights" under plain-error review. *Id.* We added that "several circuits have addressed this

___

interstate transportation of a stolen motor vehicle between November 17, 2010, and December 1, 2010—was dismissed at trial.

    [4] *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946).

situation—where the judge gave a correct *Pinkerton* instruction and a faulty aiding and abetting instruction—and each one upheld the convictions so long as the *Pinkerton* theory supported them." *Id.* (collecting cases).

The Supreme Court vacated the district court's judgment and remanded the case for further consideration in light of *Dean v. United States*, 137 S. Ct. 1170, 1176–77 (2017), which held that trial courts can consider the length of statutorily mandated sentences for § 924(c) convictions when administering sentences for the underlying predicate offenses. *Edmond v. United States*, 137 S. Ct. 1577 (2017). On remand, the district court resentenced Edmond to one day on eleven of his convictions and a total of 660 months, or 55 years, on his three § 924(c) convictions.

Edmond filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that the "residual clause" of § 924(c)—which defines a "crime of violence" as a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B)—is unconstitutionally vague, and that his trial counsel was ineffective. After the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), holding that § 924(c)'s residual clause is, indeed, unconstitutionally vague, *id.* at 2336, Edmond's appointed counsel filed a supplemental brief, arguing that "the convictions for the various offenses for which [Edmond] was convicted under a conspiracy theory" do not constitute crimes of violence under § 924(c), R. 360, PID 4980.

The district court denied Edmond's § 2255 motion, rejecting Edmond's arguments that carjacking is not a crime of violence; that Edmond's *Pinkerton*-based carjacking convictions do not constitute crimes of violence under § 924(c) after *Davis*; and that his counsel was ineffective.

Edmond appealed the district court's denial of his § 2255 motion. He then filed a motion for reconsideration and a request for a certificate of appealability. The district court denied Edmond's motion for reconsideration, but granted his request for a certificate of appealability "only as to the issue of whether [Edmond's] carjacking convictions, charged as substantive offenses but argued, supported and instructed under a coconspirator theory of liability, qualify as crimes of violence under § 924(c)(3)(A)." R. 412, PID 5364. The district court "f[ound] that reasonable jurists could debate whether the carjacking charges [Edmond] was convicted of under a coconspirator theory of liability (*Pinkerton* conspiracy) qualify as substantive crimes of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A)." *Id.*

Edmond requested an expanded certificate of appealability from this court on his ineffective-assistance-of-counsel claim, but we denied his request, leaving only the issue certified by the district court.

The government moved to vacate the certificate of appealability as improvidently granted. We deferred ruling on the motion to consider it with the parties' briefs.

**II.**

"In reviewing the denial of a 28 U.S.C. § 2255 motion, we apply a de novo standard of review to the legal issues and uphold the factual findings of the district court unless they are clearly erroneous." *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019) (quoting *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009)). We review de novo whether an offense is a "crime of violence" under § 924(c). *United States v. Woods*, 14 F.4th 544, 551 (6th Cir. 2021).

**A.**

18 U.S.C. § 924(c) states, in relevant part:

(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in

relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime [be sentenced to certain penalties depending on the circumstances]. . . .

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Courts refer to § 924(c)(3)(A) as the "elements clause," and § 924(c)(3)(B) as the "residual clause."

*See Davis*, 139 S. Ct. at 2324.

In *Davis*, the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague. *Id.* at 2336. "After *Davis*, a predicate offense qualifies as a crime of violence only if use of force is an element of the offense, and this excludes conspiracy charges." *Woods*, 14 F.4th at 552; *see also Portis v. United States*, 33 F.4th 331, 334 (6th Cir. 2022) ("Since *Davis*, we have limited the statute's application further, ruling that a conspiracy to commit Hobbs Act robbery does not count as a predicate 'crime of violence' for § 924(c) purposes, whether under the residual clause or the elements clause." (citing *United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019)).[5]

"We use a categorical approach to determine whether an offense constitutes a crime of violence for purposes of § 924(c)(3). Under this approach, we focus[] on the statutory definition

---

[5] In *Ledbetter*, the parties agreed that conspiracy to commit Hobbs Act robbery is not a "crime of violence" under the elements clause. *See* 929 F.3d at 361. "Because the Government relie[d] only on th[e] now-invalidated [residual] clause to support [two defendants'] convictions under § 924(c)," we vacated the defendants' § 924(c) convictions. *Id.*

of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *Manners v. United States*, 947 F.3d 377, 379 (6th Cir. 2020) (citations and internal quotation marks omitted). Carjacking under 18 U.S.C. § 2119 is a crime of violence under § 924(c)'s elements clause. *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019).

Edmond argues that the predicate offenses for his § 924(c) charges are actually conspiracy to commit carjacking offenses, rather than substantive carjacking offenses. Edmond reasons that he "was not part of any carjackings," he "was never present," and the government presented only a *Pinkerton* theory of liability at trial. Appellant's Br. at 16; *see also id.* at 29.

This argument is unavailing in part because the indictment, the government's arguments at trial, the jury instructions, and the verdict form all indicate that Edmond's § 924(c) charges were based on the predicate offenses of substantive carjacking, not his single conspiracy offense. *See Woods*, 14 F.4th at 552–53 (reasoning that the defendants' § 924(c) convictions were not predicated on a conspiracy charge because the indictment and jury instructions clearly stated that the § 924(c) charges were based on substantive offenses).

In the operative third superseding indictment, each of the § 924(c) charges of which Edmond was convicted referred explicitly to a corresponding substantive carjacking charge. The § 924(c) charge in Count 3 referred explicitly to the carjacking charge in Count 2 as the predicate crime of violence; the § 924(c) charge in Count 5 referred explicitly to the carjacking charge in Count 4 as the predicate crime of violence; and the § 924(c) charge in Count 7 referred explicitly to the carjacking charge in Count 6 as the predicate crime of violence.

Further, in closing argument, the government explicitly connected each § 924(c) offense to its corresponding substantive carjacking offense. R. 181, PID 3159 ("And so we have the carjackings and the gun charges. They are paired together in order. There are seven of them. So

we have Count 2. That will be a carjacking. The gun [charge] for that is right behind it, Count 3. Then we go like that all the way through to Count 15."); *id.* at PID 3187 ("So they get their new crime car. Take it. Perfect tool, and they use it to commit Counts 4 and 5 [a carjacking and a § 924(c) offense]."); *id.* at PID 3192 ("Here we are[,] Joseph Campau, January 25, 2011, Counts 6 and 7 [a carjacking and a § 924(c) offense].").

Additionally, the jury instructions explained that the predicate offenses for the § 924(c) convictions were the substantive carjacking offenses. *Id.* at PID 3323–24 ("[T]o find that a defendant committed a firearm crime that's charged in Count 3, you must first find that he committed or caused or aided the carjacking crime that is charged in Count 2. In order to find that a defendant committed the firearm crime that is charged in Count 5, you must first find that he committed or caused or aided the carjacking crime that is charged in Count 4, and so on for the rest of [the] firearm counts.").

Finally, the verdict form refers to the § 924(c) counts as "[c]ausing use or carrying of a firearm during and in relation to *carjacking*." R. 137, PID 733–34 (emphasis added).

To the extent Edmond argues that the government's exclusive reliance on *Pinkerton* liability to establish his guilt of the substantive offenses necessarily means that those predicate offenses are not crimes of violence under § 924(c), we reject that argument. This court's decision in *Woods* is instructive. In *Woods*, a jury convicted brothers Antoine and Austin Woods of several offenses under the Violent Crimes in Aid of Racketeering Act (VICAR). 14 F.4th at 548. The jury convicted Antoine of conspiracy to commit murder in aid of racketeering, attempted murder in aid of racketeering, assault with a dangerous weapon in aid of racketeering, two § 924(c) offenses, and obstruction of justice; the jury convicted Austin of conspiracy to commit murder in

aid of racketeering and a § 924(c) offense. *Id.* The predicate offenses alleged in the § 924(c)

charges were attempted murder and assault with a dangerous weapon. *See id.* at 552.

On appeal, the defendants argued that those offenses were "not proper predicate offenses

because the jury instructions allowed them to be convicted of the [§] 924(c) charges under a theory

of *Pinkerton* liability."[6] *Id.* We rejected that argument, reasoning:

> The Woods brothers' argument conflates the predicate crimes of violence underlying their § 924(c) conviction (which are not conspiracy charges) and the basis of liability for the [§] 924(c) charges, which may have been *Pinkerton* liability. The Supreme Court's only inquiry in *Davis* was whether the § 924(c) residual clause was unconstitutionally vague, not whether *Pinkerton* liability is a proper basis for a [§] 924(c) conviction. *See Davis*, 139 S. Ct. at 2327. Finding the Woods brothers guilty through a theory of *Pinkerton* liability is still permissible as long as the underlying predicate offenses qualify as crimes of violence under the § 924(c) elements clause. *United States v. Myers*, 102 F.3d 227, 238 (6th Cir. 1996) (affirming a § 924(c) conviction based on *Pinkerton* liability). Because both VICAR attempted murder and VICAR assault with a dangerous weapon are crimes of violence,[7] not conspiracy crimes, the Woods brothers' argument fails.
>
> In *Davis*, the conspiracy charge itself was not at issue. Rather, the Court clearly stated that it was the fact that the conspiracy charge rested solely on § 924(c)'s residual clause, and not the elements clause[,] that precluded liability. *Davis*, 139 S. Ct. at 2325. Substantive charges like VICAR murder, on the other hand, rely on the elements clause, not the unconstitutionally vague residual clause. This is true whatever legal theory of liability the jury relies on to find the defendant guilty of § 924(c). . . .
>
> The jury's potential reliance on *Pinkerton* liability to convict of the [§] 924(c) offenses does not change this outcome. Other circuits have come to a similar conclusion, finding that a defendant can be convicted of a § 924(c) charge based on a theory of *Pinkerton* liability.

14 F.4th at 552–53 (collecting cases).

---

[6] Austin Woods was convicted of one of the § 924(c) offenses, but was not charged with either of the predicate offenses. *Woods*, 14 F.4th at 553. We explained that "[c]harging the underlying predicate offense is not required for liability under § 924(c); it is enough if the defendant may be prosecuted in a court of the United States for the predicate offense." *Id.* at 554. Of course, the government must prove beyond a reasonable doubt that the defendant in fact committed the underlying predicate offense. *United States v. Nelson*, 27 F.3d 199, 200–01 (6th Cir. 1994).

[7] We note that after *Woods* was decided, the Supreme Court held that attempted Hobbs Act robbery is not a "crime of violence" under § 924(c)'s elements clause. *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022).

To be sure, this case differs from *Woods* in that here, the district court instructed the jury that it could convict Edmond of the predicate offenses and the § 924(c) charges based on a *Pinkerton* theory, but the jury charge in *Woods* included a *Pinkerton* instruction for the § 924(c) charges only. Accordingly, the Woods brothers argued that their VICAR offenses were not proper predicate "crimes of violence" because they could have been convicted of the *§ 924(c)* offenses based on a *Pinkerton* theory of liability. *See id.* at 552. By contrast, Edmond argues that his carjacking offenses are not proper predicate "crimes of violence" because he was convicted of *those* offenses based on *Pinkerton* liability.

That distinction does not render *Woods* inapposite. *Woods* not only establishes that "a defendant can be convicted of a § 924(c) charge based on a theory of *Pinkerton* liability," *id.* at 553, but also suggests that a defendant can be convicted under § 924(c) based on a predicate substantive offense proven under a *Pinkerton* theory of liability. There is no indication in *Woods* that Austin Woods committed attempted murder and assault with a dangerous weapon—the predicate offenses for his § 924(c) conviction—as a principal. Austin Woods went with fellow gang members, including Antoine, to surveil a house associated with a rival gang member. *Id.* at 549. He also texted Antoine a link to a YouTube video showing the address of the rival gang member's grandmother's house, and told him that he believed that the rival gang member was hiding there. *Id.* Later, other gang members—but not Austin—fired shots into the house. *Id.* at 550, 554. We concluded that there was sufficient evidence to convict Austin Woods of the predicate offenses for his § 924(c) charge under a *Pinkerton* theory of liability because he was part of the conspiracy on the day of the shooting, the shooting was "intended to advance" the gang, and the shooting was "reasonably foreseeable to [him]." *Id.* at 554–55.

Additionally, *Woods* cited *United States v. Henry*, 984 F.3d 1343 (9th Cir. 2021), approvingly. In that case, Henry and three codefendants were charged with a conspiracy offense, armed bank robberies, bank robberies, and firearm offenses under § 924(c). *Id.* at 1347. The indictment alleged that Henry remained outside the banks while his codefendants robbed the banks. *Id.* After a jury convicted Henry, he argued on appeal that *Davis* prohibited using his armed-bank-robbery convictions, based on *Pinkerton* liability, as predicates for his § 924(c) convictions. *Id.* at 1354. The Ninth Circuit rejected that argument because armed bank robbery "does have violence as an element," and "[d]efendants found guilty of armed bank robbery under either a *Pinkerton* or aiding-and-abetting theory are treated as if they committed the offense as principals." *Id.* at 1355–56. The court explained that "*Davis* does not conflict with or undermine the cases upholding § 924(c) convictions based on *Pinkerton* liability." *Id.* at 1356. Like Henry's predicate offenses, Edmond's predicate offenses were based on *Pinkerton* liability.

We have held that a defendant need not have committed the predicate substantive crime as a principal to be convicted under § 924(c). In *United States v. Richardson*, 948 F.3d 733 (6th Cir. 2020), the defendant was convicted of five counts of aiding and abetting Hobbs Act robbery, and five § 924(c) counts. *Id.* at 737. This court held that aiding and abetting Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause, *id.* at 741, reasoning:

> There is no distinction between aiding and abetting the commission of a crime and committing the principal offense. Aiding and abetting is simply an alternative theory of liability indistinct from the substantive crime. Thus, under 18 U.S.C. § 2, an aider and abettor is punishable as a principal. So to sustain a conviction under § 924(c), it makes no difference whether [the defendant] was an aider and abettor or a principal.

*Id.* at 741–42 (citations omitted). Similarly, under a *Pinkerton* theory of liability, "a defendant may be convicted as a principal even if he did not participate in the offense." *United States v. Hills*, 27 F.4th 1155, 1182 (6th Cir. 2022).

-11-

We acknowledge that, unlike *Pinkerton* liability, which requires that an offense be a "reasonably foreseeable 'consequence[] of the unlawful agreement,'" *United States v. Hamm*, 952 F.3d 728, 744 (6th Cir. 2020) (quoting *Pinkerton v. United States*, 328 U.S. 640, 648 (1946)), aiding-and-abetting liability requires that a defendant intend to facilitate the offense, *Rosemond v. United States*, 134 S. Ct. 1240, 1248 (2014). Nevertheless, under *Richardson*'s logic, the fact that Edmond was not convicted of carjacking as a principal does not suggest that his carjacking offenses are not "crimes of violence" under a categorical application of § 924(c)'s elements clause.

Another case relied upon by Edmond is distinguishable. In *Ledbetter*, two defendants were convicted of murder by firearm during a crime of violence under §§ 924(c) and (j)(1). 929 F.3d at 360. The purported "crime of violence" was conspiracy to commit Hobbs Act robbery. *Id.* at 360–61. The parties agreed that conspiracy to commit Hobbs Act robbery could constitute a "crime of violence" only under § 924(c)'s residual clause. *Id.* at 361. We held that "[b]ecause the Government relie[d] only on that now-invalidated clause to support [the defendants'] convictions under § 924(c), those convictions must be set aside." *Id.* Unlike Edmond's § 924(c) convictions, the § 924(c) convictions in *Ledbetter* were predicated on a conspiracy offense, not substantive "crime of violence" offenses.[8]

In sum, because Edmond's § 924(c) convictions were properly predicated on his substantive carjacking offenses, rather than his conspiracy offense, relief is unwarranted.

**B.**

In support of its motion to vacate the certificate of appealability as improvidently granted, the government argues that Edmond's claim was not "substantial" or "constitutional" in nature.

---

[8] Other appellate cases cited by Edmond are also distinguishable. In those cases, the defendants' vacated § 924(c) convictions were predicated on conspiracy offenses, not substantive offenses. *See United States v. Barrett*, 937 F.3d 126, 129 (2d Cir. 2019); *United States v. Simms*, 914 F.3d 229, 232 (4th Cir. 2019).

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under [28 U.S.C. § 2255]." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Because the district court did not err in denying Edmond's motion, we need not address whether the district court improvidently granted the certificate of appealability.[9]

### III.

For the foregoing reasons, we AFFIRM the district court's judgment, and DENY AS MOOT the government's motion to vacate the certificate of appealability as improvidently granted.

---

[9] We note, however, that our conclusion required careful analysis of the issues, and that *Woods* was decided after the certificate of appealability was issued.