87 F.3d 1315
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Appellee,
v.
Patrick GRAY and Anthony Gray, Appellants.
 Nos. 95-1197, 95-1198.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1996.
 
 1
 Before: NORRIS and SUHRHEINRICH, Circuit Judges, and WELLS,[1] District Judge.
 
 Opinion
 
 2
 WELLS, District Judge.
 
 
 3
 Appellant, Patrick Gray, appeals his conviction and sentence for conspiracy to possess cocaine. Appellant, Anthony Gray, appeals his convictions for conspiracy to possess cocaine and use of a firearm in connection with a drug trafficking offense. For the following reasons, Patrick Gray's conviction and sentence and Anthony Gray's convictions are AFFIRMED.
 
 
 4
 * A secret investigation of a suspected drug dealer, Tracy Stallworth ("Stallworth"), was initiated in the summer of 1993. Stallworth met with undercover government agents on October 14, 1993 to discuss a 100-kilogram cocaine transaction. After the meeting, Stallworth called Anthony Gray to tell him that "things looked good" for the transaction.
 
 
 5
 Stallworth had a second meeting with government agents on October 21, 1993. At that meeting, Stallworth agreed to pay $150,000 for 25 kilograms of cocaine, and to take additional cocaine for sale by consignment.
 
 
 6
 Later, Stallworth and Anthony Gray made plans for their roles in the transaction. Anthony Gray planned to bring an additional person with him for protection.
 
 
 7
 On October 22, 1993, Stallworth met Patrick and Anthony Gray outside her apartment and gave them approximately $150,000 for the transaction. The money was bundled in stacks of $10,000 and placed in a bag. Stallworth instructed the Grays to follow her in their car.
 
 
 8
 The prearranged site of the transaction was the Hyatt Regency Hotel in Dearborn, Michigan. Undercover agents met Stallworth at the front of the hotel, and instructed her to go to the back of the hotel. Stallworth told Agent Granados ("Granados") that she was ready to purchase 25 kilograms of cocaine, and she would take 25 kilograms on consignment. Granados explained that the cocaine was hidden in a nearby car, and he gave Stallworth a card explaining how and where to find the cocaine. When Stallworth received the card from Granados, she called Anthony Gray on a cellular phone and told him to bring the money to the back of the hotel. Patrick and Anthony Gray passed the agents in a blue Lumina sedan and parked about 100 feet from where the agents and Stallworth were standing.
 
 
 9
 The agents asked Stallworth to have the Lumina driven over to where they were standing. Stallworth placed another call to Anthony Gray and the Lumina came back across the parking lot. When the Lumina stopped, Patrick Gray was in the driver seat and Anthony Gray was in the passenger seat.
 
 
 10
 Granados put his head through the open window on the passenger side of the Lumina and asked where he could find the money for the transaction. Anthony Gray indicated the money was on the floor near his feet. Granados saw a large sum of money and the butt end of an automatic pistol lying between Anthony Gray and Patrick Gray.
 
 
 11
 The surveillance team arrested Stallworth, Anthony Gray, and Patrick Gray. During a search incident to arrest, agents seized a gun from Stallworth, two pagers from Anthony Gray, and a bundle containing $10,112 in cash from Patrick Gray's waistband. The agents also seized a bag containing $142,000.
 
 
 12
 On March 2, 1994, Stallworth, Patrick Gray, and Anthony Gray were charged, in a superseding indictment, with conspiring to possess cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Anthony Gray was also charged with using and carrying a firearm during and in relation to a cocaine trafficking offense, in violation of 18 U.S.C. § 924(c).
 
 
 13
 Stallworth entered a plea agreement with the government and testified against the Grays at trial. Following a three-day jury trial, both Defendants were found guilty of all charges.
 
 
 14
 The district court held a sentencing hearing on February 6, 1995. The district court found that Anthony Gray and Patrick Gray were each responsible for 25 kilograms of cocaine, and sentenced both Defendants to ten years of imprisonment. Anthony Gray received an additional, consecutive five-year sentence for his firearm offense. Each Defendant filed a timely notice of appeal.
 
 II
 
 15
 Patrick Gray appeals his conviction on the bases that he was convicted by insufficient evidence, prejudiced by the admission of improper evidence, and prejudiced by inappropriate prosecutorial comments. Gray also contends the district court erred in determining his sentence. As these claims lack merit, Patrick Gray's conviction and sentence are affirmed.
 
 
 16
 * The standard for review of a claim of insufficient evidence is, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989); Fed.R.Crim.P. 29(a). The essential elements of cocaine conspiracy are: 1) the existence of an agreement to violate the drug laws; and, 2) Patrick Gray's knowledge of, intention to join, and participation in the conspiracy. United States v. Lee, 991 F.2d 343, 348 (6th Cir.1993).
 
 
 17
 Patrick Gray argues the government built its conspiracy case on circumstantial evidence which is not sufficient to support a guilty verdict. However, in United States v. Sims, 975 F.2d 1225 (6th Cir.1992), cert. denied, 507 U.S. 932 (1993), the court found "very solid" evidence of conspiracy when the defendant met with other defendants prior to a drug deal, carried what appeared to be a heavy bag in and out of a residence, and drove a vehicle which held cash and weapons. The court rationalized this finding by stating:
 
 
 18
 The government's proof that [the defendant] was connected to the conspiracy "need only be slight," so long as it is sufficient to establish the connection beyond a reasonable doubt. Since "[a] defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances," it is clear that the evidence regarding [the defendant] was sufficient to connect him to the conspiracy.
 
 
 19
 Id. at 1239 (citations omitted).
 
 
 20
 As in Sims, Patrick Gray met with Stallworth and Anthony Gray prior to traveling to the site of the cocaine transaction. Patrick Gray was driving the Lumina, containing a gun and bag of money. The car passed by Stallworth and the government agents. When Stallworth requested the car be moved closer to the agents, Patrick Gray complied. Under the Sims standard, this evidence is sufficient to support Patrick Gray's conviction for conspiracy to possess cocaine.
 
 
 21
 Patrick Gray also argues the district court improperly admitted evidence of the terms of Stallworth's plea agreement, over counsel's objection, and failed to give a sua sponte curative instruction. Jt.App. at 245-46. In United States v. Townsend, 796 F.2d 158, 163 (6th Cir.1986), the court held that testimony of a promise to truthfully testify, contained in a plea agreement, does not constitute impermissible bolstering of a witness's credibility. Evidence of a co-defendant's guilty plea may not be admitted as substantive evidence of a defendant's guilt. However, the terms of a plea agreement are admissible to help the jury assess witness credibility. United States v. Christian, 786 F.2d 203, 214 (6th Cir.1986). If counsel does not request a limiting instruction, the trial court's failure to give a limiting instruction is not reversible error, unless a rare situation results in exacerbated prejudice. Christian, 786 F.2d at 214. The mere fact that Stallworth was Patrick Gray's co-defendant does not demonstrate a situation where "exacerbated prejudice" occurred. Therefore, the district court did not err in allowing the terms of Stallworth's plea agreement to be admitted into evidence.
 
 
 22
 The prosecutor made the following statement during closing argument:
 
 
 23
 But the biggest mistake of all was Patrick Gray. If he hadn't, out of greed, taken that $10,212 from the satchel of money, he might have been able to convince a jury that he was just hanging around.
 
 
 24
 Jt.App. at 303-04. Following an objection, the prosecutor continued, "I'm sorry, I didn't mean to say that he had to put on any evidence." Id. The prosecutor continued, "There was a cocaine conspiracy and he was just hanging around. But he got greedy, he took the money from that deal and put it in his waistband." Jt.App. at 304.
 
 
 25
 Patrick Gray contends this sequence of events violated his rights under the Fifth Amendment. In United States v. Drake, the court set forth a four-part test for improper comment by a prosecutor:
 
 
 26
 1) Were comments "manifestly intended" to reflect on the accused's silence or of such a character that the jury would "naturally and necessarily" take them as such;
 
 
 27
 2) Were the remarks isolated or extensive;
 
 
 28
 3) Was the evidence of guilt otherwise overwhelming; [and]
 
 
 29
 4) What curative instructions were given, and when?
 
 
 30
 885 F.2d 323, 324 (6th Cir.1989), cert. denied, 493 U.S. 1033 (1990).
 
 
 31
 A balancing of the Drake factors demonstrates a reversal of Patrick Gray's conviction is not warranted. The prosecutor's isolated comment did not appear to be manifestly intended to reflect on Patrick Gray's silence. Gray did not request a curative instruction; however, moments later, the trial judge instructed the jury on the presumption of innocence, the government's burden of proof, and the fact that the Grays' failure to testify could not be considered. Jt.App. at 309. While the evidence against Patrick Gray cannot fairly be characterized as overwhelming, this deficiency is not fatal, given the Drake factors which favor upholding his conviction.
 
 B
 
 32
 Finally, Patrick Gray contends the district court erred in calculating his sentence because the court held him responsible for 25 kilograms of cocaine and denied his request for two downward departures under U.S.S.G. § 3B1.2(a). For the following reasons, these contentions do not succeed.
 
 
 33
 A defendant is responsible for all known or foreseeable quantities of drugs upon sentencing. United States v. Ledezma, 26 F.3d 636, 646 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994). Evidence presented at trial demonstrated Patrick Gray knew or could have foreseen the 25 kilogram quantity involved in the October 22 drug transaction. Testimony showed Anthony Gray and Stallworth discussed a 25 kilogram deal. Jt.App. at 228. Patrick Gray met with Anthony Gray and Stallworth prior to the transaction, and drove a vehicle containing approximately $152,000. Patrick Gray was present when Anthony Gray showed Granados the money, and held a bundle of cash in his waistband. Jt.App. at 182-84, 188-89, 231-232. From these facts, the trial judge's conclusion, by a preponderance of circumstantial evidence, that Patrick Gray knew or could have foreseen the 25 kilogram quantity was not clearly erroneous.
 
 
 34
 Patrick Gray also argues the district court erred in failing to recite specific factual findings regarding the amount of cocaine attributable to him. The Sixth Circuit has held that it is not improper for a sentencing judge, who presides over trial, to fail to recite specific findings of fact on sentencing issues. United States v. Richardson, 949 F.2d 851, 859 (6th Cir.1991).
 
 
 35
 The district court's failure to grant a departure for minimal participation and presence of "outrageous government conduct" is the subject of Patrick Gray's final challenge to his sentence. As ten years is the mandatory minimum statutory sentence for a conviction of possessing five kilograms or more of cocaine under 21 U.S.C. § 841(b)(1)(A), the court did not err in refusing to depart.
 
 III
 
 36
 In his brief, Anthony Gray argued his conviction should be reversed because evidence was improperly admitted against him, and his trial on drug conspiracy charges resulted in double jeopardy. During oral argument, Gray also contended that evidence against him was insufficient for a weapons conviction under 18 U.S.C. § 924. These arguments lack merit and Anthony Gray's convictions are affirmed.
 
 
 37
 * Anthony Gray contends his drug conspiracy trial constituted double jeopardy and violated his rights under the Fifth Amendment. On February 4, 1994, a declaration of forfeiture was entered against jewelry, valued at $7375.00, seized from Anthony Gray. Gray's jewelry was apparently forfeited pursuant to 21 U.S.C. § 881(a)(6), which provides: "all moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... [and] all proceeds traceable to such an exchange" shall be subject to forfeiture. Notwithstanding the seizure, Anthony Gray's trial on drug conspiracy charges began on August 29, 1994.
 
 
 38
 In United States v. Salinas, 65 F.3d 551 (6th Cir.1995), the court squarely considered the double jeopardy implications of a civil forfeiture prior to related criminal proceedings. The court upheld the district court's denial of a motion to quash an indictment on drug conspiracy charges, because the defendant's prior forfeiture of a 1971 Pontiac, pursuant to 21 U.S.C. § 881(a)(6), did not constitute prior "punishment," for double jeopardy purposes. Further, the court held that the defendant's failure to file a claim in the forfeiture proceeding estopped him from challenging the government's theory of forfeiture. Id. at 553 n. 1.
 
 
 39
 As in Salinas, Anthony Gray's jewelry was forfeited as proceeds under § 881(a)(6). Gray similarly failed to file a claim in the forfeiture proceeding. Salinas compels the conclusion that Gray was not subject to double jeopardy.
 
 B
 
 40
 Anthony Gray argues the district court erred in admitting evidence of a scheme involving Granados, Stallworth, and Gray. As Gray failed to raise any objection at trial, the admission of this evidence is subject to plain error analysis. United States v. Glover, 21 F.3d 133, 136 (6th Cir.), cert. denied, 115 S.Ct. 360 (1994). No plain error occurred because evidence of an alleged conspiracy was both relevant and admissible in a criminal drug conspiracy trial under Federal Rule of Evidence 401 and 402.
 
 
 41
 Anthony Gray contends the evidence against him was insufficient because evidence of an agreement solely between a defendant and a government agent cannot sustain a conspiracy conviction. United States v. Pennell, 737 F.2d 521, 536 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985). The holding in Pennell does not apply here, because there is an overwhelming amount of evidence in the record supporting the conclusion that Stallworth conspired with Anthony Gray. Stallworth asked Gray for protection, informed him that "things looked good" for the cocaine transaction, and met with Gray to purchase cocaine. Jt.App. at 224-228.
 
 
 42
 Stallworth gave Anthony Gray approximately $152,000 for the cocaine purchase and telephoned him during the drug transaction. Jt.App. at 231, 241. Finally, Gray presented Granados with money for the transaction. Jt.App. at 182-83. When viewed in a light most favorable to the prosecution, the evidence presented to the jury established the existence of an agreement to violate the drug laws, and, Anthony Gray's knowledge of, intention to join, and participation in the conspiracy. United States v. Lee, 991 F.2d 343, 348 (6th Cir.1993); United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989); Fed.R.Crim.P. 29(a).
 
 
 43
 Anthony Gray's appellate brief incorporates Patrick Gray's argument regarding the improper admission of Stallworth's plea agreement "by reference." This argument fails for the reasons previously stated. See United States v. Christian, 786 F.2d 203, 214 (6th Cir.1986).
 
 C
 
 44
 During oral argument, Anthony Gray also challenged the sufficiency of evidence for his conviction on firearms charges under 18 U.S.C. § 924(c), based on United States v. Bailey, 116 S.Ct. 501 (1995). Section 924(c)(1) enhances the statutory penalty for persons convicted of using or carrying a firearm during a drug trafficking crime. 18 U.S.C. § 924(c)(1). Bailey held that a conviction for using a firearm under § 924(c)(1) must be supported by a finding that a defendant "actively employed the firearm during and in relation to the predicate crime." Active employment could include brandishing or displaying a firearm during a drug trafficking offense, but would not include passive storage of a weapon near drugs or drug proceeds. Id. at 508. A conviction for carrying a firearm may be sustained on a finding that a firearm was immediately available for use or within a defendant's reach during a drug trafficking crime. United States v. Riascos-Suarez, 73 F.3d 616 (6th Cir.1996).
 
 
 45
 Facts presented at trial indicate Anthony Gray placed a firearm on the car seat during the October 22, 1996 drug transaction. As the firearm was both actively displayed and within Anthony Gray's reach during the drug transaction, his conviction was proper under both prongs of § 924(c).
 
 
 46
 For the foregoing reasons, the decisions of the district court are AFFIRMED.
 
 
 
 [1]
 The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation