NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0081n.06

No. 21-1663

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 09, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| ADAM DEAN BROWN, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: GILMAN, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury convicted defendant Adam Brown on three drug-trafficking charges. His prior felony drug offense and the jury's findings that the fentanyl he distributed resulted in serious bodily injury and death mandated an enhanced sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(C). On appeal, he raises several challenges to his convictions and sentence. Because intervening caselaw mandates reversal with respect to the enhanced sentence that he received for his conviction for conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846, with a death-resulting enhancement, we vacate his sentence with respect to count one. The remainder of his appeal is without merit. Accordingly, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.

Brown's appeal involves several aspects of 21 U.S.C. § 841. Subsection (a) makes it unlawful for an individual to, among other things, distribute a controlled substance, and subsection (b) sets forth mandatory minimum and maximum sentences that depend upon the weight and type of controlled substance, the individual's criminal history, and whether the distributed substance resulted in serious bodily injury or death. Section 846 criminalizes attempt and conspiracy to commit the distribution of a controlled substance, and subjects those convicted "to the same penalties as those prescribed for the offense."

Section 841(b)(1)(C) is the applicable penalty provision for Brown, which applies to the distribution of "a controlled substance in schedule I or II" (including fentanyl). It has a few tiers. The lowest is a twenty-year maximum sentence, which increases to thirty if a defendant violates § 841(a) "after a prior conviction for a felony drug offense has become final." But if "death or serious bodily injury results from the use of such [controlled] substance," § 841(b)(1)(C) mandates a twenty-year minimum sentence. And as with Brown's case, that mandatory minimum increases to life imprisonment with the presence of a prior felony drug conviction.

Here, a grand jury indicted Brown and two others on various drug crimes for their role in distributing fentanyl that resulted in the overdoses of two individuals struggling with opioid addiction, Alexander Brenner and Jeffrey Keon. Relevant to this appeal are three charges: conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, with a death-resulting enhancement (count one); distribution of a controlled substance, in violation of 21 U.S.C. § 841, with a death-resulting enhancement (count five); and

distribution of a controlled substance, in violation of 21 U.S.C. § 841, with a serious-bodily injury enhancement (count six).[1]

A jury convicted Brown on all three counts and found him responsible for Brenner's death and Keon's serious bodily injury. With those findings, and Brown's prior felony drug convictions, the district court imposed mandatory terms of life imprisonment on counts one and six under § 841(b)(1)(C), and three hundred sixty months on the remaining counts, all concurrent with each other.

With this background, we turn to defendant's numerous claims on appeal.

II.

Brown raises two issues concerning his conviction for distributing a controlled substance in violation of 21 U.S.C. § 841, that resulted in Jeffrey Keon's serious bodily injury (count six): (1) the sufficiency of the evidence supporting the conviction; and (2) whether the district court's evidentiary rulings concerning the admissibility of certain text messages post-Keon's death infringed upon Brown's right to present a defense.

A.

The crime of distributing a controlled substance resulting in serious bodily injury under § 841 requires a jury to find both (1) knowing or intentional distribution of a controlled substance, and (2) serious bodily injury caused by the use of that drug. *Burrage v. United States*, 571 U.S. 204, 210 (2014). The indictment here charged Brown with distributing a mixture and substance that contained a detectable amount of fentanyl. Importantly, the government was not required to establish Brown *knew* that what he distributed had fentanyl; rather, all that was necessary is proof

---

[1]The grand jury also charged Brown with two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841, to which he pleaded guilty before trial. Brown does not raise any issues regarding these convictions in this appeal.

that he distributed a controlled substance. *See United States v. Mahaffey*, 983 F.3d 238, 242–43 (6th Cir. 2020). The government must also establish causation—that Keon's serious bodily injury "result[ed] from" Brown's conduct. § 841(b)(1)(C). Under *Burrage*, "where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." 571 U.S. at 218–19.

We must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We can sustain a conviction based on circumstantial evidence alone, and the evidence need not disprove every hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). A sufficiency claim does not allow us to "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted).

This standard is a "high bar" to clear. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). For Brown's appeal, it is even more so. At trial, he moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that Keon sourced drugs from various dealers and that no eyewitness observed Brown give Keon a controlled substance. But his briefing here advances a different argument, contending that the evidence showed Keon overdosed not from fentanyl, but from benzodiazepine. Given the specificity of his Rule 29 motion, Brown

forfeited the new ground for appeal he now advances.[2] *See United States v. LaVictor*, 848 F.3d 428, 457 (6th Cir. 2017). So our review is even "more lenient." *United States v. Woods*, 14 F.4th 544, 555 (6th Cir. 2021). We apply the "manifest miscarriage of justice" standard, under which Brown can succeed only if the record is "devoid of evidence pointing to guilt." *Id.* (citations omitted).

Brown cannot make that showing. The record reveals that Keon was a regular customer of Brown's. The two had recently texted about Brown's access to "fire white"—which the jury heard means fentanyl (to which Brown was previously connected)—and eventually consummated a drug deal. Cell-phone records demonstrate that the two talked briefly on January 24, 2018, and met up shortly thereafter. The jury heard from Keon's mother describing Keon's awareness of the drug's potency—she witnessed him return home on that day, enter his bedroom, come out to say, "Whatever happens, don't call 911," and then collapse. It also learned that three doses of the opioid-overdose-countering Narcan were needed to revive Keon and that, while Keon was recovering at the hospital, his mother found a baggie with drugs wrapped in tinfoil. The jury was presented with heartbreaking evidence that Keon's mother told Keon where she had hidden those drugs after he persistently asked where they were, and that he died from a fentanyl overdose the following day. Finally, the jury heard from a medical expert that fentanyl toxicity caused the first overdose and Keon's death. In sum, the record here is nowhere close to being devoid of evidence pointing to guilt.

---

[2]Brown disagrees. He contends that he "made a general Rule 29 motion at the close of the Government's case," which he renewed at the end of his proofs, preserving all grounds for appeal. But that is not what the record reflects. Rather, Brown's attorney asked the district court to "hold" presenting his Rule 29 motion pending his proofs, and then told the district court at the end of his proofs that he was renewing it and would be filing a written motion shortly. It was in that written motion that Brown made a specific, and not general, motion for a judgment of acquittal.

Brown resists this conclusion by noting that the hospital's drug screen was positive for benzodiazepine and negative for fentanyl, and thus suggests that the jury convicted Brown of distributing benzodiazepine (which was not charged in the indictment). But the jury was presented with an explanation for both—a benzodiazepine overdose differs from one induced by fentanyl (namely, an overdose of benzodiazepine cannot be reversed by Narcan), and the hospital's urinalysis test was not capable of detecting fentanyl. Indeed, it is not disputed that Keon died of a fentanyl overdose the very next day, and the record evidence suggests the source of those drugs (the bag hidden by his mother) was the same drugs he purchased from Brown that led to the first overdose.

For these reasons, defendant's sufficiency-of-the-evidence challenge is without merit.

B.

Brown's other challenge to his serious-bodily-injuring-distribution-of-fentanyl conviction for Keon is an evidentiary one packaged in constitutional terms. After Keon's death (but before Brown learned of it), Brown reached out to Keon, texting: "Damn, Bro. What happened to you . . . ?" Law enforcement officials investigating Keon's death decided to impersonate Keon and exchanged text messages with Brown. The gist of the exchange was Brown proclaiming that what he had delivered to Keon was not what had caused the overdose. The government objected to the introduction of these text messages on hearsay grounds. Brown responded that they were admissible under the rule of completeness or under Rule 803 as evidence of Brown's state of mind. The district court sustained the government's objection as inadmissible hearsay. Brown contends on appeal that the district court erroneously kept out of evidence these text messages, resulting in the denial of his right to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted). We do not agree.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane*, 476 U.S. at 690). However, "the Supreme Court has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions." *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc). "A defendant 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

"[E]rroneous evidentiary rulings rarely constitute a violation of a defendant's right to present a defense." *United States v. Hardy*, 586 F.3d 1040, 1044 (6th Cir. 2014). The exclusion of defense evidence violates a defendant's constitutional right to present a defense only where it is "arbitrary" or "disproportionate"; that is, where "important defense evidence" is excluded without serving "any legitimate interests" or in a manner that is "disproportionate to the ends that [the rationale for exclusion is] asserted to promote." *Holmes*, 547 U.S. at 324–26 (internal quotation marks omitted). To prevail, a defendant must show that an arbitrary or disproportionate exclusion of evidence, "evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (brackets and citation omitted).

Generally, "[w]here a defendant attacks an evidentiary ruling as violating the Sixth Amendment, review of the legal aspects of the constitutional violation is de novo." *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014). But Brown has a forfeiture problem. Below, he neither challenged the district court's evidentiary rulings on a constitutional basis nor advanced the arguments supporting this claim—that the evidence was both exculpatory and represented

"a present sense impression of the events surrounding Keon's overdose." We must therefore view Brown's claim through the more demanding plain-error lens. *See United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) ("Plain error review applies even if the forfeited assignment of error is a constitutional error."). Plain error means: "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected [the defendant's] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008) (citation omitted).

Brown cannot satisfy these compounding, demanding standards. The district court correctly kept the messages out as inadmissible hearsay, and Brown makes no argument to the contrary here. He argues, rather, that the text messages he sent corroborate his story—that "Brown did not give Keon anything since 'last week,'" and "that the drugs Brown gave Keon were nothing different than he normally provided – i.e., heroin." Stated differently, Brown asks that we should take his text messages for the truth of the matter asserted because they support his claim of innocence.

"The principle that undergirds [Brown]'s right to present exculpatory evidence is also the source of essential limitations on the right." *Taylor*, 484 U.S. at 410. That includes the reasonable limitations set forth in the rules of evidence prohibiting the introduction of hearsay. No case permits a defendant to introduce anything he pleases, even if exculpatory. Rather, the caselaw has uniformly rejected such a broad view. *See Rockwell*, 341 F.3d at 512; *see also United States v. Kerley*, 784 F.3d 327, 342 (6th Cir. 2015) (finding no violation of a right to present a defense when the evidence was inadmissible hearsay). And regardless, Brown was still able to tell the jury his version of the facts, including that he did not deliver fentanyl to Keon.

Brown has not demonstrated any error, let alone plain error.

III.

Brown raises three issues concerning his two convictions stemming from the overdose death of Alexander Brenner—conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, with a death-resulting enhancement (count one), and distribution of a controlled substance, in violation of 21 U.S.C. § 841, without a death-resulting enhancement (count five). He challenges (1) the district court's admission into evidence of a co-conspirator's plea agreement, (2) its jury instruction for count one, and (3) its interpretation of the jury's verdict form for count five.

A.

Count one of the first superseding indictment charged Brown, Terence Robinson, and one other for conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, with a death-resulting enhancement. This charge arose from Alexander Brenner arranging with Robinson for the purchase of what they thought was heroin from Brown, as the pair had done previously. Brenner fatally overdosed on the substance, which turned out to be fentanyl.

Robinson pleaded guilty to this charge pursuant to a plea agreement and agreed to testify at Brown's trial. During Robinson's testimony, the district court received into evidence (over Brown's objection) copies of Robinson's plea and cooperation agreements. Specifically, the district court cited our decision in *United States v. Townsend*, which provides that the "introduction of the entire plea agreement [does not] improperly bolster [a witness]'s credibility"; rather, doing so "permits the jury to consider fully the possible conflicting motivations underlying the witness' testimony and, thus, enables the jury to more accurately assess the witness' credibility." 796 F.2d 158, 163 (6th Cir. 1986).

We review a district court's decision to admit evidence over a defendant's objection under the abuse-of-discretion standard. *See United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015). "When reviewing for abuse of discretion, we view 'the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *United States v. Deitz*, 577 F.3d 672, 688 (6th Cir. 2009) (citation omitted). The question is not whether the evidence is prejudicial, but whether it is unfairly so. Unfair prejudice "does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). "We reverse only where the district court's erroneous admission of evidence affects a substantial right of the party." *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007) (citing Fed. R. Evid. 103(a)).

In Brown's view, the district court abused its discretion in admitting evidence of Robinson's plea agreement because the agreement was proof positive of a substantive element of the crime that both Robinson and Brown were charged—a conspiracy to deliver drugs. But our caselaw plainly permits the government to introduce such evidence to help the jury assess that witness's credibility. *See Townsend*, 796 F.2d at 163; *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000). And it may do so prophylactically in order "to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide." *United Sates v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986); *see also Tocco*, 200 F.3d at 416–17 ("The prosecutor may refer to such agreement in appropriate circumstances to deflect defendant's use of a plea agreement to *attack* the witness' credibility."). It was for this purpose that the government sought to introduce Robinson's plea agreement.

And our precedent tempers Brown's prejudice concerns. True, we have said, it can be prejudicial for a coconspirator who pleaded guilty to testify against another at trial, but "much of this potential for prejudice is negated when the pleading codefendant testifies regarding the specific facts underlying the crimes in issue." *United States v. Thornton*, 609 F.3d 373, 378 (6th Cir. 2010) (ellipsis and citation omitted); *see also United States v. Gray*, 87 F.3d 1315, at *3 (6th Cir. June 3, 1996) (table op); *United States v. Walker*, 871 F.2d 1298, 1303–04 (6th Cir. 1989). That is what happened here, as Robinson extensively testified about his role in helping Brenner secure the drugs from Brown. Moreover, the jury heard about Robinson's "motivation for testifying" and his "potential sentence, so [Brown] cannot legitimately claim this information prejudiced him." *Thornton*, 609 F.3d at 378.

Two more points cut against Brown. First, there is no evidence that the government used the plea agreement for any improper purpose, such as in its closing argument. *Id.*; *United States v. Carson*, 560 F.3d 566, 575 (6th Cir. 2009). Second, the district court here gave a jury instruction cautioning that "[t]he fact that Terence Robinson has pled guilty to a crime is not evidence that [Brown] is guilty, and [you] cannot consider this against [Brown] in anyway." These points further weaken Brown's "I was prejudiced" position. *See Thornton*, 609 F.3d at 378; *Walker*, 871 F.2d at 1304.

For these reasons, the district court did not abuse its discretion when it admitted into evidence Robinson's plea and cooperation agreements.

## C.

Brown next contends that the district court erroneously instructed the jury regarding the death-resulting enhancement for count one—the conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. It gave a *Pinkerton* instruction

on this issue, which "permits conviction of a conspirator for the substantive offenses of other conspirators committed during and in furtherance of the conspiracy." *United States v. Martin*, 920 F.2d 345, 348 (6th Cir. 1990). The instruction provided that the jury need consider only "whether Alexander Brenner's death resulted from the distribution of the heroin or fentanyl by a member of the conspiracy." Brown contends this misstated the law by failing to instruct the jury that it must find that Brown was in the chain of distribution that caused Brenner's death. Having not advanced that objection below, we review under the plain-error standard. *See United States v. Stewart*, 729 F.3d 517, 530 (6th Cir. 2013). This means that we must find that "taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (citation omitted).

As the government correctly concedes, Brown has satisfied this standard. We recently reiterated (albeit after Brown's trial) that "[w]hen a defendant's underlying crime relies on a conspiracy theory of liability, then the district court cannot impose the enhanced sentence unless the jury finds that the defendant was part of the distribution chain that led to the victim's overdose." *United States v. Sadler*, 24 F.4th 515, 560 (6th Cir. 2022); *see also United States v. Williams*, 998 F.3d 716, 734 (6th Cir. 2021); *United States v. Hamm*, 952 F.3d 728, 747 (6th Cir. 2020); *United States v. Swiney*, 203 F.3d 397, 406 (6th Cir. 2000). Failing to give such an instruction constitutes plain error, *Sadler*, 24 F.4th at 561, which had a substantial effect on Brown's rights—here the jury found Brown guilty on count one for the distribution of the fentanyl that killed Brenner under the *Pinkerton* theory's "lower standard." *Id.*

As for a remedy, *Sadler* provides that we must vacate Brown's sentence for count one and "remand for a new trial on the sole question of whether [Brown] was within the chain of distribution as required before imposing an enhanced sentence under 21 U.S.C. § 841(b)(1)(C)."

*Id.* at 562, 564. The government asserts that it will not retry Brown on the chain-of-custody issue if we affirm his conviction for count six (which, as set forth above, we do) and thus requests that we just remand to correct the judgment for count one. We decline to do so, and will instead leave it to the district court to address on remand. Bound by *Sadler*, we therefore vacate Brown's sentence with respect to count one and remand for further proceedings consistent with this opinion.

D.

The last issue with respect to Brenner's overdose death involves an interpretation of the jury's verdict for count five.

Under *Alleyne v. United States*, the Sixth Amendment requires that "[a]ny fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. 99, 103 (2013). This includes § 841(b)'s sentencing enhancements. *Burrage*, 571 U.S. at 210. And § 841(b)(1)(C) applies to convictions related to the distribution of "a controlled substance in schedule I or II," with fentanyl being a schedule II opioid. Unlike other portions of § 841(b), this provision does not have a drug-weight requirement.

The jury's verdict form found Brown guilty of distributing a controlled substance as set forth in count five of the indictment, but that the government failed to "prove[] beyond a reasonable doubt that Alexander Brenner would not have died but for the use of the same fentanyl distributed by [Brown]." The jury's findings here, combined with his prior felony drug convictions (more on this below), meant that his statutory range increased to not more than thirty years in prison. *See* § 841(b)(1)(C).

Brown contends the jury rendered a general verdict—that it found only that he distributed a "controlled substance" but did not find that the substance was fentanyl as required for the § 841(b)(1)(C) enhancement. So, he states, "[t]he jury's verdict only supports a conviction for an

unnamed amount of drugs, with no quantity," and therefore the statutory enhancement cannot apply. He thus suggests that, because the jury declined to impose the death-resulting enhancement, it necessarily rejected a finding that fentanyl was the controlled substance supporting his conviction. Brown having raised this issue below, our review is de novo. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003).

The applicable indictment charged Brown in count five with distributing a controlled substance, in violation of § 841(a)(1). And it sets forth that the controlled substance was fentanyl. The jury instructions also made this expressly clear, which emphasized that fentanyl was the charged controlled substance.

With this background, we can easily reject Brown's challenge to the jury verdict. Criminal trials and their resulting judgments flow from "the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury." *United States v. Kuehne*, 547 F.3d 667, 683–84 (6th Cir. 2008). More to the point, we do not view verdict forms in isolation; rather, they come with "a user's manual: the jury instructions. So we evaluate the verdict form in the context of the instructions as a whole[.]" *Moody v. United States*, 958 F.3d 485, 491 (6th Cir. 2020); *see also Slaughter v. Parker*, 450 F.3d 224, 241 (6th Cir. 2006) ("We must consider the verdict form in conjunction with the jury instructions."). Here the indictment and the jury instructions "ensured that the jury knew" that fentanyl was the controlled substance charged in count five. *Woods*, 14 F.4th at 553. Nor does it matter that the jury made no factual findings concerning quantities—"when specific quantities are not alleged, . . . § 841(b)(1)(C) . . . establishes the default statutory maximum sentences and does not require as an element of the offense a specific quantity of drugs." *United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002). In sum, the jury returned a specific, not general, verdict.

Brown's argument to the contrary conflates the jury's two findings: that the government proved beyond a reasonable doubt that Brown distributed fentanyl, but that the government failed to prove beyond a reasonable doubt that the fentanyl was Brenner's but-for cause of death. Just because the jury found in the government's favor on one, but in Brown's favor on the other, cannot mean that the jury "rejected fentanyl."

For these reasons, defendant's claim of error here is without merit.

IV.

Finally, Brown raises a few issues concerning his sentence that are not tethered to his specific counts of conviction.

A.

First, Brown takes issue with the content of the 21 U.S.C. § 851 notice. That section sets forth the procedure required before a court may impose a conviction-based enhancement under § 841(b). It provides that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." § 851(a)(1). A district court must then—after conviction but before pronouncement of sentence—"inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." § 851(b). Section 851(c) then sets forth what a district court must do if a person denies or otherwise claims a conviction is invalid.

The government filed a § 851 sentencing enhancement notice. It identified four "prior felony drug convictions that the government [would] rely upon at sentencing": convictions in March 2001, January 2009, and March 2009 for "deliver/manufacture of a controlled substance," in violation of M.C.L. § 333.7401(a)(a)(iv), and a conviction in March 2009 for "imitation, manufacture or distribution" of a controlled substance, in violation of M.C.L. § 333.7341(3).

In this appeal, Brown argues the notice failed to inform him of the possibility of a mandatory life sentence. He does not draw this here-is-what-the-penalty-could-be requirement from the text of § 851. Nor could he, for the text does not mandate one—all it requires is that the government "stat[e] in writing the previous convictions to be relied upon." § 851(a)(1); *see also United States v. Vanness*, 85 F.3d 661, 663 (D.C. Cir. 1996) ("The statute does not burden the government with the duty of advising defendants of sentencing consequences."). Rather, Brown argues we should infer the requirement from the statute's "purpose": it "was designed to satisfy the requirements of due process and provide the defendant with reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism." *United States v. Pritchett*, 496 F.3d 537, 548 (6th Cir. 2007) (citation omitted). Brown having failed to object to the content of the notice below, we review for plain error. *See United States v. Gonzalez*, 512 F.3d 285, 288 (6th Cir. 2008).

There was no plain error here. Fatal to Brown's challenge is that no binding caselaw required the government to set forth such information in the § 851 notice. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). Given that the unambiguous language of the statute imposes no such requirement, it logically follows that there is no caselaw requiring such a command through purposivism. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Equally fatal for Brown is a lack of effect on his substantial rights—he twice acknowledged the possibility

of mandatory life sentences, he was present in court when the government set forth his exposure to mandatory life sentences if the government filed § 851 enhancements when the parties were engaged in plea bargaining, and his attorney acknowledged that possibility when responding to the government's § 851 notice. *Cf. United States v. King*, 127 F.3d 483, 489 (6th Cir. 1997) ("[I]t is undisputed that prior to trial the prosecuting attorney and defense counsel discussed the potential enhancement, including the offense upon which it would be based.").

B.

The next issue is a well-worn Sixth Amendment challenge. As set forth, the Supreme Court has interpreted the Sixth Amendment to require that a jury decide any fact that increases minimum and maximum sentences, including those set forth in § 841(b)'s sentencing enhancements. *Burrage*, 571 U.S. at 210 (citing *Alleyne*, 570 U.S. at 114–16; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). In Brown's view, his jury was required to find two facts supporting his § 841(b)(1)(C) enhancement: (1) that he had a "prior conviction for a felony drug offense [that] has become final"; *and* (2) the type and quantity of the drug he distributed that resulted in death or serious bodily injury. As to the latter, the jury made the requisite finding regarding his distribution of fentanyl resulting in Keon's serious bodily injury and was not required to make any quantity findings for that distribution. *See Stewart*, 306 F.3d at 310. So, although he couches his argument as this being a mandatory "dual finding," his objection here really just goes to the former—that the jury made no factual findings concerning his prior felony drug convictions supporting the enhancement. Brown raised this argument below, so we review de novo. *United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011).

Binding precedent forecloses Brown's claim. *Almendarez-Torres v. United States* expressly carved out an exception to this general jury-fact-finding rule for facts of prior

convictions. *See* 523 U.S. 224, 226–29 (1998). Although *Almendarez-Torres* came before *Apprendi* and *Alleyne*, our caselaw makes clear that it remains good law. *See, e.g.*, *Moody*, 958 F.3d at 491; *United States v. Young*, 847 F.3d 328, 369 (6th Cir. 2017); *United States v. Nagy*, 760 F.3d 485, 488 (6th Cir. 2014). And we have said so in the face of a challenge to an enhancement under § 851 for a prior felony drug offense. *Young*, 847 F.3d at 369.

Recent caselaw suggests that this exception might not apply to the First Step Act of 2018's revisions to § 851. *See United States v. Fields*, 53 F.4th 1027, 1036–38 (6th Cir. 2022). That matter addressed a § 841(b)(1)(A)(viii) enhancement, wherein the defendant received a twenty-five year mandatory minimum sentence for possessing 500 grams or more of methamphetamine with intent to distribute given his two prior convictions for "serious drug felon[ies]." *Id.* at 1031. In dicta, we commented that because a "serious drug felony" under the First Step Act is "(1) a 'serious drug offense' under 18 U.S.C. § 924(e)(2)(A), for which the defendant (2) served over a year in prison and (3) was released within fifteen years of the commencement of the instant offense," and because *Almendarez-Torres* is a "narrow exception to the general rule," that it makes "intuitive" sense "that the Sixth Amendment would require the jury to decide whether, for each prior conviction, [a defendant] was incarcerated for over a year and released within fifteen years of the instant offense." *Id.* at 1031, 1036–37. But we ultimately declined to decide the issue because, in that matter, "those facts were actually submitted to the jury." *Id.* at 1038.

Brown argues that "*Fields* requires this Court to remand for resentencing without the 21 U.S.C. § 851 enhancement." Not so. For one, *Fields* did not address the issue, and we are not bound by its dicta. And for another, and more importantly, *Fields* dealt with a different enhancement—one falling under § 841(b)(1)(A) for a "serious drug felony." Here, Brown received an enhancement under § 841(b)(1)(C)'s "felony drug offense." It is a different definition,

*compare* 21 U.S.C. § 802(44), *with* (57), and one that *used* to be applicable to §§ (b)(1)(A) and (B) until the First Step Act modified those subsections, *see Fields*, 53 F.4th at 1031; *see also* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5220–21.

For these reasons, Brown's claim of error on this issue is meritless.

C.

Brown also takes issue with the district court's conclusion that his various Michigan convictions for cocaine distribution qualified as a "prior conviction for a felony drug offense" for purposes of § 841(b)(1)(C)'s enhancement.

A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts *conduct relating to narcotic drugs*, marihuana, anabolic steroids, or depressant or stimulant substances." § 802(44) (emphasis added). Because of the "relating to" language, we have commented that this definition is expansive, and necessarily includes more conduct than the Guideline's narrower definition of "controlled substance offense." *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998) (discussing U.S.S.G. § 4B1.2(2)).

Our focus is on Brown's three prior convictions for cocaine distribution under M.C.L. § 333.7401(a)(2)(a)(iv). Before the district court, Brown acknowledged that our existing, albeit unpublished, caselaw provided that we do not employ the categorical approach when determining whether a prior conviction constitutes a "felony drug offense" for § 841(b) purposes. *See United States v. Soto*, 8 F. App'x 535, 541 (6th Cir. 2001). But he argued that if we were to do so (like other circuits), his convictions for distributing cocaine under Michigan law swept

"broader than the federal definition."[3] Although not the model of clarity, his overbreadth argument below was that Michigan's substantive definition of cocaine as set forth in its statutory schedules is broader than the federal schedules. *Compare* 21 U.S.C. § 802(17), *with* M.C.L. § 333.7214(a)(iv).

Brown abandoned that specific, cocaine-based overbreadth argument and instead presses a newer, broader one on appeal. He asserts that Michigan's drug-distribution statute criminalizes a broader swath of conduct than the federal definition of "conduct relating to narcotic drugs" because Michigan law defines "controlled substance" as not just "a drug," but also a "substance, or immediate precursor." M.C.L. § 333.7104(3). So plain-error review applies again.

That demanding standard mandates Brown's loss on this issue. There is no binding circuit precedent holding that Michigan's controlled-substances statute prohibits more conduct than § 841's definition of a "felony drug offense" on the basis that M.C.L. § 333.7401(2)(a)(iv) also criminalizes substances and immediate precursors. *See Al-Maliki*, 787 F.3d at 794. Indeed, our caselaw seemingly points in the opposite direction, for we have said that M.C.L. § 333.7401 falls within the even narrower definition of the Guidelines. *See, e.g.*, *United States v. Gardner*, 32 F.4th 504, 529 (2022). And our caselaw notes that, under Michigan law, "the specific substance a

---

[3]We are apparently on one side of a lopsided circuit split on the issue of whether courts must employ the "categorical approach" as we do for other statutes, like the Armed Career Criminal Act, when evaluating § 841(b) predicate offenses. *See generally Mathis v. United States*, 579 U.S. 500 (2016). We said in *Soto*, without any analysis or citation, that "this court does not employ a categorical approach to determining whether a prior conviction constitutes a 'felony drug offense' for purposes of section 841(b)(1)." 8 F. App'x at 541. We have relied on this language to reject similar arguments to those advanced by Brown here, *see, e.g.*, *Meeks v. Kizziah*, 2020 WL 9396243, at *2 (6th Cir. Dec. 15, 2020) (order), as have the district courts within our circuit, *see, e.g.*, *United States v. Chappell*, 2020 WL 5064656, at *3–4 (E.D. Mich. Aug. 27, 2020). But it appears that we are the sole outlier. The First, Second, Third, Seventh, Eighth, and Ninth Circuits have all concluded that courts must use the categorical approach to determine whether a particular prior felony drug offense qualifies for purposes of § 841(b)'s statutory enhancement. *See United States v. Thompson*, 961 F.3d 545, 551 (2d Cir. 2020) (collecting cases).

defendant is charged with possessing or delivering is one of the elements of a § 333.7401 violation." *United States v. Pittman*, 736 F. App'x 551, 555 (6th Cir. 2018) (collecting cases). Accordingly, "[b]ecause Michigan courts treat the specific substance as an element of the offense, § 333.7401(2)(a)(iv) is divisible," *id.*, and therefore it apparently matters not whether § 333.7401 also covers substances and immediate precursors given Brown's *cocaine*-distribution convictions. *See also United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) ("Michigan's controlled-substance statute is divisible.").

D.

Finally, Brown asserted initially that the district court erroneously calculated his Guidelines range by concluding that his prior drug-distribution convictions rendered him a career offender under U.S.S.G. § 4B1.1. The government responded that there is no reason to address this challenge because Brown's life sentence was statutorily required, and thus the Guidelines played no role in his sentence and would be a factor only if we vacated both counts that mandated the § 841(b) life-in-prison enhancement. Brown then waived this issue in his reply, conceding that, "if the career offender adjustment becomes relevant upon resentencing, that it should be decided by the district court in the first instance." That waiver aside, his statutory enhancement stands with respect to count six, so this issue is without merit.

V.

For these reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.